## Charles Conway v. Georgia Cumming, Philip Fitzpatrick, Philip Scripture and Joseph Patrissi

[636 A.2d 735]

No. 92-286

Present: Allen, C.J., Gibson, Dooley and Johnson, JJ., and Peck, J. (Ret.), Specially Assigned.

Opinion Filed July 9, 1993

Motion for Reargument Denied November 2, 1993

*Charles Conway,* pro se, Swanton, Plaintiff-Appellant.

*Jeffrey L. Amestoy,* Attorney General, Montpelier, and *Thomas J. Rushford,* Assistant Attorney General, Waterbury, for Defendants-Appellees.

**Gibson, J.** Plaintiff was convicted of sexual assault, sentenced to a term of five to twenty years, and is now an inmate committed to the custody of the Commissioner of Corrections. He appeals from a judgment of the Chittenden Superior Court denying injunctive relief to direct the Commissioner to restore plaintiff's furlough status. We affirm.

As an inmate, plaintiff participated in the Vermont Treatment Program for Sexual Aggressors (VTPSA) as part of a rehabilitation effort. In October 1989, the Commissioner began granting plaintiff furloughs to be in the community for short visits. See 28 V.S.A. § 808(a). In September 1990, the Commissioner revoked plaintiff's participation in the furlough program

on the ground that plaintiff had engaged in negative behavior, the specific nature of which is not before us. The Commissioner did not provide plaintiff with a hearing or other process in which he could respond to the reasons given for revoking his furlough status. Thereafter, plaintiff sought an injunction challenging the Commissioner's decision on grounds that a revocation without hearing violated his rights under the United States and Vermont constitutions as well as under Vermont statutory law.[1] The trial court denied the relief, concluding that plaintiff's furlough status was not a protected liberty interest under the United States Constitution and that Vermont law did not create a protected liberty interest in furloughs. This appeal followed.

## I.

The central issue on appeal is whether plaintiff's due process rights were violated when his furlough status was terminated without a hearing. Under the United States Constitution, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In the context of a prison environment, those protections have been subject to the necessarily broad discretionary authority of prison officials over prison administration. *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 126 (1977). "'Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" *Id.* at 125 (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). The United States Supreme Court has "consistently refused to recognize more than the most basic liberty interests in prisoners." *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). We must decide, therefore, whether furlough status confers a

---

[1] Plaintiff invoked jurisdiction under 42 U.S.C. § 1983 for violation under color of state law of federally protected civil rights, including rights guaranteed under the Eighth Amendment (guarantee against cruel and unusual punishment) and Fourteenth Amendment (due process of law); for violation of Chapter I, Article 4 of the Vermont Constitution; and for violation of 28 V.S.A. § 851, relating to imposition of punishment upon Corrections inmates. Plaintiff also recited the Vermont "Mental Distress Statute" in his complaint, but relief was not pursued thereafter on this ground. Nor has the applicability of the Vermont Constitution been briefed; accordingly, we shall not consider this issue.

liberty interest derived either from the federal constitution or from the Vermont statutory scheme.

Plaintiff cites *Morrissey* as support for the proposition that his liberty interest is protected by the United States Constitution. In that case, the Supreme Court held that the due process clause of the Constitution protected the liberty interest of a person on parole. 408 U.S. at 482. But the constitutional reach of *Morrissey* has generally stopped at the prison walls. Thus, the Court has found no constitutional right in placement in any particular prison, *Meachum v. Fano*, 427 U.S. 215, 224–25 (1976), state of the union, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983), or particular section of a prison, *Hewitt v. Helms*, 459 U.S. at 468. Further, the Court has held that the Constitution provides no guarantee or right to an inmate in obtaining parole, *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979),[2] or good-time credit for satisfactory behavior, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). The issue then is whether plaintiff's furlough status more closely resembles that of a parolee, whose liberty interest *Morrissey* would protect, or that of an incarcerated person, in which case a federal constitutional right is not guaranteed.

 We hold that plaintiff's status under furlough more closely resembles that of an inmate seeking a particular right or status within an institution, rather than that of a parolee. Supervision of plaintiff by the Commissioner both under law and in practice was not diminished by his furlough status. He not only remained incarcerated, but his enrollment in VTPSA imposed a number of behavioral mandates and restrictions that would not have applied to him as an inmate under the usual rules and restrictions governing inmates generally. Significantly, the law makes a clear distinction between the consequences of absconding while on furlough, which would constitute the crime of escape and could lead to an added prison term,[3] and the violation of parole, for which an offender risks

---

[2] Four members of the Court, however, were of the view that inmates may have a liberty interest in parole release, which is derived solely from the existence of a parole system. See *Board of Pardons v. Allen*, 482 U.S. 369, 373 n.3 (1987).

[3] 13 V.S.A. § 1501(a)(1) makes it a crime to escape or attempt to escape from

return to the custody of the Commissioner for the unexpired term of the original sentence. 28 V.S.A. § 552(b)(2); see *Asherman v. Meachum*, 566 A.2d 663, 668 (Conn. 1989). In sum, no liberty interest in furlough status may be asserted directly under the United States Constitution. See *Nash v. Black*, 781 F.2d 665, 668 (8th Cir. 1986); *Baumann v. Arizona Dep't of Corrections*, 754 F.2d 841, 845 (9th Cir. 1985); cf. *Asherman*, 566 A.2d at 668 (no constitutionally derived liberty interest in home-release status); *Jenkins v. Fauver*, 528 A.2d 563, 570–71 (N.J. 1987)(no liberty interest implicated by reclassification of all prisoners with prior homicide convictions to more restrictive custodial category); *People ex rel. Feliciano v. Waters*, 472 N.Y.S.2d 455, 456 (App. Div. 1984) (loss of eligibility to participate in work-release program not a violation of any cognizable right); *Mitchell v. Meachum*, 770 P.2d 887, 890 (Okla. 1988) (no liberty interest in situs of confinement).

■ Our analysis of claims arising directly under the federal constitution does not end the inquiry, however. We must next ask whether a protectible interest in furlough status has been created by Vermont statute, and, if so, whether that interest should be recognized under the federal constitution. See *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989) ("state law may create enforceable liberty interests in the prison setting"). Under both federal and state law, the answer depends on whether the inmate asserting the right has "a legitimate claim of entitlement" to the interest, *id.* at 460, rather than a mere "'unilateral hope.'" *Id.* (quoting *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)). As the Court stated in *Olim v. Wakinekona*, 461 U.S. at 249:

> [A] State creates a protected liberty interest by placing substantive limitations on official discretion. An inmate must show "that particularized standards or criteria guide the State's decisionmakers." *Connecticut Board of Pardons v. Dumschat*, 452 U. S. 458, 467 (1981) (Brennan, J., concurring). If the decision-maker is not "required to base its decisions on objective and defined criteria," but instead

---

any correctional facility "while in lawful custody." An inmate on furlough is still considered to be "in lawful custody." See 13 V.S.A. § 1501(b)(2); 28 V.S.A. § 808(c).

"can deny the requested relief for any constitutionally permissible reason or for no reason at all," *ibid.*, the State has not created a constitutionally protected liberty interest.

In *Thompson*, the Supreme Court acknowledged that the prison visitation regulations of the Kentucky Department of Corrections contained "substantive predicates," which "undoubtedly are intended to guide the duty officer's discretion in making the ultimate decision." 490 U.S. at 464. The Court stressed, however, that state regulations would be read to create a liberty interest entitled to the protections of the due process clause only if they contained "the requisite relevant mandatory language."*Id.* It held that the visitation regulations involved in *Thompson* "[stopped] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met."*Id.*

The trial court in the present case employed an essentially similar analysis, citing the language in 28 V.S.A. § 808(a) that "[t]he commissioner *may* extend the limits of the place of confinement of an inmate" (emphasis added) and the language in § 808(c) that a grant of furlough status "shall in no way be interpreted as a probation or parole of the inmate, but shall constitute solely a permitted extension of the limits of the place of confinement." The statutes contain no limitations on the discretionary authority granted to the Commissioner. Thus, although there are distinctions between the visitation regulations in *Thompson* and the Vermont statute before us, those distinctions are insufficient to remove this case from the holding in *Thompson*. Consequently, the trial court's decision was correct, as weighed against federal law. The United States Constitution not only fails to provide a liberty interest in furlough status directly, but *Thompson* instructs us that it would not recognize such right under existing Vermont law as a state-created liberty interest.

## II.

Plaintiff next argues that his termination from the furlough release and sex-offender programs was "punishment" for alleged sexual activity with an inmate and that but for charges of such sexual activity no basis would have existed for termination. He contends that his statutory rights were violated when proper disciplinary procedures were not followed. The Legisla-

ture has established procedures to govern the discipline and control of inmates. See 28 V.S.A. §§ 851–855. Section 851 provides in relevant part that "[n]o inmate shall be punished except under the order of the officer or of a deputy designated by him for the purpose, nor shall any punishment be imposed otherwise than in accordance with the provisions of this subchapter." In cases where disciplinary segregation or the loss of good time might be involved, inmates have a right to a hearing, to notice of the charge, to confront the person bringing the charge, to be present and be heard, to examine witnesses, and to assistance from an employee of the facility, if available. *Id.* § 852(b).

█ In considering what constitutes "punishment" generally under the constitution, the United States Supreme Court has held that three factors are particularly relevant: (1) whether the intent of the government officials is to punish, (2) whether the purpose of the restriction in question is for some legitimate governmental purpose, and (3) whether the restriction is excessive in relation to its purpose. *Bell v. Wolfish*, 441 U.S. 520, 538–39 (1979). In *Bell,* the Court concluded that, absent an intent to punish, a government decision that is reasonably related to a legitimate governmental purpose is not punishment. *Id.* at 539.

██ Plaintiff's contention that he has been punished must fail. He has no liberty interest, as such, in a furlough program, as we have held in Part I, nor has he pointed to any restriction he has suffered other than continuation of the incarceration to which he was legally sentenced. See *Thompson,* 490 U.S. at 460–61 ("'As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.'") (quoting *Montanye v. Haymes,* 427 U.S. 236, 242 (1976)). The Commissioner terminated plaintiff's furlough status as a matter within his discretion. The Commissioner was not required to afford plaintiff a due process hearing or explain why he believed plaintiff had failed to comply with the requirements of the VTPSA. Plaintiff has failed to describe a legal "punishment."

*Affirmed.*

**Dooley, J.,** dissenting. I disagree with the result reached by the majority for two reasons. First, the trial court struck too

soon and failed to give plaintiff an opportunity to develop a factual record, and second, the conclusion that plaintiff lacks a protected liberty interest is inconsistent with our Vermont constitutional jurisprudence as most recently explained in *G. T. v. Stone,* 159 Vt. 607, 622 A.2d 491 (1992). Accordingly, I respectfully dissent.

A review of the facts available in the limited record will help illustrate the reasons why the trial court ruled precipitously. Although it is important to emphasize that the trial court granted defendants' motion to dismiss without holding an evidentiary hearing, this first point of disagreement with the majority is highlighted by its statement that the reasons for revoking plaintiff's furlough are "not before us." In fact, defendants attached internal memoranda and reports to their motion to dismiss showing that plaintiff was dismissed from the Vermont Treatment Program for Sexual Aggressors (VTPSA), thereby terminating the associated furlough rights, because he engaged in sexual activity with two other inmates on September 17, 1990. The corrections staff disbelieved plaintiff's denial that the incident occurred.

As shown by the complaint, as well as the reports filed by defendants, there is more at stake in this case than furlough status, despite the exclusive focus of both the trial court and this Court on that issue. Because of his removal from the VTPSA, plaintiff was transferred to another correctional center. More important, he lost the expectation that he would be paroled within 90 days, which accompanied his status in the treatment program. Corrections personnel reclassified plaintiff, thereby excluding him from eligibility for parole. Very likely, plaintiff will face a significant lengthening of his sentence as a result of the sexual misconduct found by the corrections staff. Moreover, plaintiff claims a contractual right to a reduced sentence as part of the agreement under which he participated in the VTPSA.

Given this context, therefore, it is important to note that this civil rights action was filed pro se, and plaintiff did not have counsel either in this Court or the trial court. In a similar case, the United States Supreme Court has held:

> Whatever may be the limits on the scope of inquiry of courts into the internal administration of prisons, allega-

tions such as those asserted by petitioner, however inartfully pleaded, are sufficient to call for the opportunity to offer supporting evidence. We cannot say with assurance that under the allegations of the *pro se* complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Haines v. Kerner,* 404 U.S. 519, 520–21 (1972) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)). We cannot say "beyond doubt" that plaintiff can prove no set of facts to justify his claim. Even the limited information we have reveals that the liberty interest implicated here is much greater than the furlough status addressed by this Court and the trial court.

Further, it is likely that internal corrections regulations exist regarding classification and eligibility for sexual abuse treatment. Such regulations may be sufficient to create a protected liberty interest even under the narrow United States Supreme Court precedents. As another case pending in this Court shows, these regulations have not been promulgated pursuant to the Administrative Procedure Act and must therefore be the subject of evidentiary development.

In addition to meeting the *Haines* standard, defendants also faced certain procedural requirements in filing their motion to dismiss. Where matters outside the pleadings are presented with a motion to dismiss under V.R.C.P. 12 and are "not excluded by the court," the motion to dismiss must be treated as a motion for summary judgment and disposed of under Rule 56. V.R.C.P. 12(c); *Nash v. Coxon,* 152 Vt. 313, 314–15, 565 A.2d 1360, 1361 (1989). Further, the court must notify the parties of the changed status. *Nash,* 152 Vt. at 315, 565 A.2d at 1361. The trial court did not give notice that it treated defendants' motion as made under Rule 56, nor did it exclude the material filed by defendants. It appears to have relied on that material in its decision, as shown by this excerpt:

Here, defendants determined that plaintiff's furlough status should be revoked because of the termination of his participation in the VTPSA resulting from his lack of progress in the program. There is no evidence that defendants intended to punish plaintiff. Furthermore, defendants' deci-

sion to deny plaintiff furlough status is reasonably related to his failure to meet the requirements of community release.

The trial court's method of handling the motion violated the *Nash* requirements.

My second point of disagreement goes to the heart of the majority opinion. Even if this case had a proper evidentiary record showing that it solely concerned furlough revocation, I cannot agree that we should adopt as the Vermont constitutional standard the United States Supreme Court's ever-narrowing analytical approach to prisoner liberty interests, most recently reiterated in *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 461 (1989). I believe that current federal jurisprudence in the area of inmate due process rights misapprehends, and consequently diminishes, the nature of the interests at stake. By relying on this approach, the majority adopts for Vermont a view of due process that significantly dilutes an essential safeguard against arbitrary state deprivation of personal liberty.

Chapter I, Article 10 of the Vermont Constitution should be construed to encompass a higher level of due process protection for prison inmates than the eviscerated federal standard recognizes.* This Court already has made clear its fundamental disagreement with the federal view of the constitutional rights of prisoners. In *State v. Berard*, 154 Vt. 306, 310, 576 A.2d 118, 120 (1990), we rejected the Supreme Court's conclusion that the constitutional prohibition against unreasonable searches and seizures has no application in the prison context, holding that the Vermont Constitution does not permit the complete eradication of this right upon incarceration. We noted that the Supreme Court based its view on "implicit, fixed assumptions about the nature of prison life and prison administration that override the facts of particular cases and remove from the courts the critical job of reviewing the facts." *Id.* We declined to

---

* Article 10, while concerned largely with the rights of persons accused of a crime, also states: "nor can any person be justly deprived of his liberty, except by the laws of the land, or the judgment of his peers." This Court has held that this language is synonymous with "due process of law." *State v. Messier*, 145 Vt. 622, 627, 497 A.2d 740, 743 (1985).

adopt a standard based on such assumptions because it necessarily results in the sanctioning of "any official conduct whatsoever in the name of 'legitimate institutional interests.'" *Id.* (quoting *Hudson v. Palmer,* 468 U.S. 517, 549 (1984) (Stevens, J., dissenting)). Our objection to this approach should apply with equal force in the present case, as the Supreme Court's prison due process analysis "tends to derogate the central role of the judiciary" in our constitutional jurisprudence. *Id.*

For more than a decade, the Supreme Court has retreated from the view of prison due process set forth in *Morrissey v. Brewer,* 408 U.S. 471 (1972). In that case, the Court declared that:

> [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the parolee and often on others. . . . By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Id.* at 482. Although this decision was narrowly written, with an emphasis on the conditional permission given to a parolee to live outside the prison, the Court "necessarily held that the individual possesses a residuum of constitutionally protected liberty while in legal custody pursuant to a valid conviction. For release on parole is merely conditional, and it does not interrupt the State's legal custody." *Meachum v. Fano,* 427 U.S. 215, 231-32 (1976) (Stevens, J., dissenting). Criminal conviction may reduce, but cannot terminate, all of a prisoner's liberty interests. *Wolff v. McDonnell,* 418 U.S. 539, 555–56 (1974) (prisoners are not "wholly stripped" of constitutional protections when imprisoned, and there "is no iron curtain drawn between the Constitution and the prisons of this country").

Because inmates retain liberty interests independent of state laws or regulations, "the relevant question is whether [any] change [in the conditions of imprisonment] constitutes a sufficiently 'grievous loss' to trigger the protection of due process." *Olim v. Wakinekona,* 461 U.S. 238, 252 (1983) (Marshall, J., dissenting). "Put another way, the retained liberty interest protected by the Constitution encompasses the right to be free from arbitrary governmental action affecting significant per-

sonal interests." *Thompson,* 490 U.S. at 467–68 (Marshall, J., dissenting). The Supreme Court's decisions have backed steadily away from these basic principles, and have severely circumscribed the retained liberty interests of prisoners. The Court now looks almost exclusively to state law to "create" prisoner liberty interests.

This Court, however, has looked recently to *Morrissey* for the principles on which it decided a case involving issues comparable to the ones present here. In *G.T. v. Stone,* 159 Vt. at 613, 622 A.2d at 493, we held that the Vermont Constitution requires a mental health patient, who had been conditionally discharged from the state mental institution and placed in the community, to be given a hearing before that discharge is revoked. The decision in *G.T.* is based in large part on the analysis in *Morrissey.* See 408 U.S. at 481. In both *Morrissey* and *G.T.,* the plaintiffs were granted conditional release, and both remained subject to numerous restrictions on their personal liberty. We held that the liberty interests involved in *G.T.* were similar to those in *Morrissey,* and concluded that due process protections attached because "plaintiff makes a convincing case that he is far freer outside of [Vermont State Hospital] than inside it to form the 'enduring attachments of normal life' and enjoy 'many of the core values of unqualified liberty.'" *G.T.,* 159 Vt. at 611, 622 A.2d at 493 (quoting *Morrissey,* 408 U.S. at 482). After so recently endorsing the analytical framework of *Morrissey,* I fail to understand the majority's refusal to apply it here.

Although the majority points to distinctions between parole and furlough release, these differences, as was the case in *G.T.,* are overwhelmed by the substantial similarity of the interests involved. Like a parolee, a prisoner on furlough release may be permitted to pursue employment or education, enjoy more extended contact with family and friends, and engage in shopping and recreational activities. A furloughed inmate has a type of freedom that makes the prison experience qualitatively different from that of inmates denied furlough release; there is little doubt that termination of furlough status qualifies as a "grievous loss." See *Crafton v. Luttrell,* 378 F. Supp. 521, 534–35 (M.D. Tenn. 1974) (because of the magnitude of the loss, and because the inmate's interest in avoiding the loss outweighed any interest of the state in summarily removing him from the

program, due process required procedural safeguards prior to termination of inmate's participation in work release program).

The restrictive terms of furlough release do not negate the inmate's liberty interest. Although the liberty granted through furlough release is more limited than that given a parolee, the difference is one of degree only. *Durso v. Rowe*, 579 F.2d 1365, 1371 (7th Cir. 1978). The crucial factor is the nature, not the weight, of the affected interest. *Morrissey*, 408 U.S. at 481. The majority's assertion that the rationale of *Morrissey* stops at the prison walls ignores the fact that a furloughed inmate does not remain continuously behind those walls.

I also cannot accept the majority's adoption of the *Thompson* "mandatory language" test. The Supreme Court's insistence that state laws cannot "create" liberty interests unless they contain mandatory language champions form over substance, and is a poor basis for determining whether particular facts implicate due process concerns. In the context of the standards commonly applied in prisons, it is illusory to condition the creation of a liberty interest on the supposition that the decisions of prison administrators will vary with the nature of the "mandatory" or "permissive" language appended to a given standard of inmate conduct. Such a mechanistic approach to rights creation insulates the court from an assessment of the very factors that count most in traditional due process jurisprudence: the inherent importance of the rights at issue and the potential grievousness of the loss of those rights. Consideration of these factors should not be shunted aside and replaced with an empty formula.

I also find the search for state-created liberty rights from mandatory language impossible to administer in a fair and principled fashion. Some federal courts following *Thompson* have expressed unease about the emphasis on mandatory language. See *Patchette v. Nix*, 952 F.2d 158, 161 (8th Cir. 1991) (despite absence of the "usual mandatory form of words," court concluded that "mandatory" language was used); *Smith v. Shettle*, 946 F.2d 1250, 1253 (7th Cir. 1991) ("We are skeptical about placing so much weight on grammatical distinctions, such as those between the imperative and declarative moods."). Even members of the *Thompson* majority have expressed dissatisfaction with the emphasis on form over substance, where applica-

tion of the mandatory language standard yielded a result not to their liking. See *Board of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (O'Connor, J., dissenting) (majority opinion was improperly "[r]elying on semantics").

Reliance on a "mandatory language" test to locate liberty interests is particularly misguided in a case like this. Plaintiff's furlough rights were revoked because corrections' staff determined that he engaged in sexual activity on a specific date at a specific place. We are not dealing here with questions of professional judgment or discretion; the sole issue is whether plaintiff committed the act that caused his furlough revocation. Whether plaintiff has a clear legal right to a furlough is beside the point; the drafting of the furlough statute will never have any effect on how a case like this is handled within the institution, or the cause and effect relationship. In these circumstances, the price of due process is small, while the gain in protection against arbitrary action is great.

Not surprisingly, commentators have been critical of the Supreme Court jurisprudence. See Herman, *Prisoners and Due Process Litigation: An Invitation to the State Courts*, in 1 Prisoners and the Law 5–3 (I. Robbins ed. 1993). Moreover, a number of state courts have recognized that the Supreme Court's due process jurisprudence is unacceptably narrow and provides insufficient protection for the citizens of their states. See, e.g., *McGinnis v. Stevens*, 543 P.2d 1221, 1236–37 (Alaska 1975) (describing additional procedural protections that Alaska constitution affords prisoners above those recognized by federal courts), *modified and remanded on other grounds*, 570 P.2d 735 (Alaska 1977); *In re Jackson*, 731 P.2d 36, 42, 233 Cal. Rptr. 911, 917–18 (1987) (unlike federal approach, due process analysis under California constitution involves assessment of the procedural protections required in light of the interests at stake); *Cooper v. Morin*, 399 N.E.2d 1188, 1193–94, 424 N.Y.S.2d 168, 174–75 (1979) (state constitution provides prisoners certain procedural protections not required by federal due process); *Watson v. Whyte*, 245 S.E.2d 916, 918–19 (W. Va. 1978) (criticizing Supreme Court's approach to prisoner liberty interest assessment). We should follow their lead in the specific circumstances present here. I would reverse.

I am authorized to state that Justice Johnson joins in this dissent.

## On Motion for Reargument

Appellant's motion for reargument, filed July 23, 1993, fails to identify points of law or fact misapprehended or overlooked by this Court. The motion is therefore denied. V.R.A.P. 40.

The issue of appellant's right to counsel was not preserved. It was not raised in the trial court; it was not briefed or argued before this Court. This case is, therefore, distinguishable from our recent decision in *Fletcher v. Gorczyk*, 159 Vt. 631, 632, 624 A.2d 1132, 1133 (1992), in which we held that an inmate who requested counsel on a habeas petition was wrongfully denied it on the grounds that the defender general's office was unable to handle the case.

Moreover, in *Fletcher*, the inmate was involved in a habeas proceeding for which counsel is expressly provided in 13 V.S.A. § 5232(2). No equivalent statutory right exists for representation in disciplinary proceedings. See 28 V.S.A. §§ 851–902.

This Court has never held that trial courts must sua sponte assign counsel to all actions involving inmates, regardless of the nature of the action. To the contrary, we have stated that disciplinary proceedings are not criminal in nature, and inmates involved in them do not receive "'the full panoply of rights' of a criminal prosection." *In re Nash*, 151 Vt. 1, 2, 556 A.2d 88, 89 (1988) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Instead, we analogized prison disciplinary hearings to small claims proceedings, "where the parties are encouraged to appear without counsel, and the court is expected to conduct the questioning of witnesses," and held that inmates do not have a right to retained or appointed counsel in disciplinary hearings. *Id.* (citing *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976)); see also *In re Chapman*, 155 Vt. 162, 167, 581 A.2d 1041, 1043 (1990) (no federal constitutional right to counsel in post-conviction review because it is civil proceeding).

Representation by counsel may have improved the quality of argument in this case, but it is neither statutorily nor constitutionally required. Requiring it at this juncture would, furthermore, create an overbroad precedent both for appointment of counsel and for the standard for motions to reargue.

**Dooley, J.,** dissenting. Plaintiff, now represented by counsel, has moved for reargument raising as a ground, among others,

that plaintiff should have been assigned counsel below. The Court has rejected this ground on the ground it was not preserved.

As defendants emphasize, plaintiff appearing pro se never raised the right to counsel point although he proceeded in forma pauperis both here and in the trial court. Following the date of submission of this case without argument, this Court decided in a factually similar case that an inmate was entitled to appointed counsel under the Public Defender Act. See *Fletcher v. Gorczyk*, 159 Vt. 631, 624 A.2d 1132 (1992).

Much of the difficulty in this case is caused by the fact it was presented without the benefit of counsel. Most of plaintiff's other grounds for reargument go to what counsel would have presented if he had appeared earlier in the proceedings. As in *Fletcher*, and *In re Morse*, 138 Vt. 327, 415 A.2d 232 (1980), on which *Fletcher* relies, "plaintiff has alleged facts sufficient to indicate that the court cannot properly rule on the petition until assigned counsel is given the opportunity to amend the petition and present her case." *Fletcher*, 159 Vt. at 632, 624 A.2d at 1134. I disagree that *Fletcher* does not apply to this case. Although pro se plaintiff labelled his complaint a civil rights action, he alleged a deprivation of liberty including a loss of furlough status and good time credits. He sought restoration of those losses. In *Fletcher*, the allegation was that defendant "improperly segregated her, and added points to her record affecting her status as a prisoner." *Id.* at 632, 624 A.2d at 1133. Unless the right to counsel is to turn on the label put on the action by a pro se prisoner, it is impossible to distinguish *Fletcher*. Rather than reaching a broad prisoner's rights ruling on an inadequate petition and record and a pro se presentation, we should recall the opinion and remand the case for proper presentation through assigned counsel.

Although we have occasionally granted reargument, we have not developed standards on when it is appropriate. Our decisons speak to when it is inappropriate, stating, for example, that new theories should not be considered on reargument. See, e.g., *Wolfe v. Yudichak*, 153 Vt. 235, 256, 571 A.2d 592, 604 (1989). This case presents an appropriate exception to that rule. *Fletcher* was decided after the case came under submission, but was not considered by the Court. Other courts have considered

such precedents as grounds for reargument even when they address points not raised before if they are "important questions of law." *Lowry v. Bankers Life & Cas. Retirement Plan*, 871 F.2d 522, 523 n.1 (5th Cir. 1989) (decided under similar F.R.A.P. 40). I would grant the motion for the limited purpose of recalling the opinion and remanding the case for presentation with counsel.

I am authorized to state that Justice Johnson joins me in this dissent.