**STATE of Vermont v. Frank Reginald GREENE**

[782 A.2d 1163]

No. 01-181

August 28, 2001. Defendant appeals from a mittimus issued by the district court committing him to the custody of the Department of Corrections for a period of twelve to forty-eight months. The order indicates that he is to serve his sentence on preapproved furlough in an intensive substance abuse program, but until an appropriate space is available for him in such a program, he should serve his sentence within a correctional facility. Defendant argues that this constitutes an impermissible increase in the severity of the sentence ordered by the court in its original order, entered on a plea agreement defendant reached with the State. Alternately, defendant argues that the provision is a more severe sentence than that contemplated in his plea agreement, and he should be given leave to withdraw his plea. We disagree and, therefore, affirm.

Defendant was charged with two separate counts of prescription fraud in violation of 18 V.S.A. § 4223(a)(1) and (d) respectively. Defendant entered into a plea agreement with the State in which he pled guilty to the charges, and the State recommended a sentence of six to twenty-four months on each charge, served consecutively. The agreement indicates that the sentence is to be served via preapproved furlough (PAF) in an intensive substance abuse program (ISAP). The agreement also gives defendant leave to withdraw his plea should his medical condition prevent him from participating in the ISAP. The court accepted the plea and entered an order dated September 21, 1999 incorporating the terms of the agreement, providing that defendant's sentence was to be served "on pre-approved furlough under the Intensive Substance Abuse Program," to commence January 3, 2000. Attached to the mittimus was a list of general conditions titled "Agreement for Pre-Approved Furlough" signed by the defendant. The above-quoted language providing that defendant was to serve his sentence on PAF followed, however, a statement found at the top of the order that the defendant was "sentenced to serve a supervised community sentence, as recommended by the Department of Corrections."

Following the entry of the court's order committing defendant to the Department of Corrections, defendant sought two stays delaying the commencement of his sentence, both of which were granted. Following the expiration of the stays in June 2000, defendant failed to

report to the Department of Corrections. During a phone contact by an officer, defendant indicated that he did not know he was supposed to report to the department. Because defendant had still not reported to the department as of September 2000, the officer sent defendant a registered letter directing him to report to the department no later than October 11, 2000. When defendant failed to report, the Department of Corrections requested that either a hearing or status conference be scheduled to determine defendant's status.

Following a status conference in February 2001, the court issued an entry order providing that defendant's sentence was to commence on March 13, 2001 unless defendant either could demonstrate medical impossibility (presumably regarding his participation in ISAP) or withdrew his plea. Defendant then sought another continuance to gather further medical evidence regarding his heart condition. The court granted the continuance, but indicated that no further continuances would be granted. The court held a status conference on April 3, 2001, after which the court issued a mittimus committing defendant to the custody of the Department of Corrections and providing that defendant was to serve his sentence on PAF ISAP. The order also stated that "the court understands, as do all parties, that the defendant shall need to commence service of sentence within a correctional facility until such time as an appropriate residence is available for PAF ISAP purposes." Defendant appeals from this order.

Defendant's primary argument on appeal is that the last mittimus issued by the court is at odds with its first. Defendant relies on the fact that the first mittimus indicated that he was sentenced to supervised community service (SCS) to argue that the court was acting ultra vires by changing his sentence to PAF in its most recent mittimus. This argument is disingenuous.

Defendant's plea agreement with the State clearly provided for a sentence to be served PAF ISAP. The list of conditions signed by defendant and attached to the court's sentencing order is titled "Agreement for Pre-Approved Furlough." The nonboilerplate portion of the court's order provides that defendant's two consecutive sentences of six to twenty-four months are to be served "on pre-approved furlough under the Intensive Substance Abuse Program." There is no assessment of defendant in the record evaluating whether he should be considered for SCS, as required by statute. 28 V.S.A. § 352(a), (b). The fact that the substance of the court's order followed boilerplate language that was inconsistent, as well as at odds with defendant's plea agreement, can be attributable only to a clerical error. As one federal court noted in the context of an appeal from a trial court's correction of a sentencing order, "a clerical error must not be one of judgment or even of misidentification, but merely of recitation, or the sort that a clerk or amanuensis might commit, mechanical in nature." *United States v. Guevremont*, 829 F.2d 423, 426 (3d Cir. 1987) (internal quotation marks and citation omitted). Such errors are susceptible to correction at any time. V.R.Cr.P. 36. Remand for the purpose of correction would serve no purpose, however, as defendant is not appealing from the court's original order. Rather, he simply argues that the sentencing order from which he does appeal impermissibly changes his original sentence. But it is clear from the record that the court intended that defendant serve his sentence PAF pursuant to his plea agreement, not as SCS.* Consequently,

---

* Federal courts follow the rule that an ambiguous written sentencing order is controlled by an unambiguous oral sen-

the court's most recent mittimus does not represent a departure from its original sentence.

At oral argument, defendant contended additionally that, regardless of whether his sentence is described as pre-approved furlough or supervised community service, his plea agreement and the original mittimus issued pursuant to the agreement never contemplated that he would be incarcerated in a correctional facility. This argument ignores one of the defining characteristics of furlough. As we stated in *Conway v. Cumming*, "[s]upervision of [a defendant] by the Commissioner both under law and in practice [is] not diminished by . . . furlough status." 161 Vt. 113, 116, 636 A.2d 735, 737 (1993). We noted that absconding while on furlough constitutes the crime of escape. *Id.* at 116 n.3, 636 A.2d at 737 n.3. Furlough, preapproved or not, can be revoked at the discretion of the corrections department and does not require a hearing before the parole board (unlike SCS). Compare 28 V.S.A. § 808(a)-(e), with *id.* § 365. In other words, the degree of decisional control over a defendant by the corrections department is the same whether the defendant is on furlough or is incarcerated. Defendant, by agreeing to furlough in his plea agreement, accepted the risk that he could be incarcerated by decision of the corrections department without a hearing before the parole board.

In light of this, the parties were confronted with the following situation.

_____

tence. See, e.g., *United States v. Daddino*, 5 F.3d 262, 266 (7th Cir. 1993), and cases cited therein. Defendant has failed to provide a transcript of his sentencing hearing, however, so we are confined to the limited record before us regarding the trial court's intended sentence. See *Lorrain v. Ryan*, 160 Vt. 202, 207 n.1, 628 A.2d 543, 547 n.1 (1993) (appellant carries burden of producing an adequate record to support points appealed).

Defendant had special needs because of his medical condition; he required a first-floor apartment while participating in the ISAP. Although a bed meeting this requirement became available, defendant instead opted for another stay to gather more evidence on the issue of whether he was medically able to participate in the ISAP. The bed was then filled by another individual who similarly needed first-floor accommodations. The trial court indicated that it was not going to grant any more stays deferring the commencement of defendant's sentence. Thus, defendant's sentence of PAF ISAP was set to commence, but there was no bed available in the ISAP that met defendant's special needs. Furthermore, defendant had repeatedly failed to report to the department following the expiration of the court's prior stays. Defendant should not be surprised that, faced with these facts, the department determined he should commence serving his sentence in a correctional facility pending his finding a suitable bed in an ISAP, and the court's order reflected this resolution of the situation.

Finally, defendant argues that the most recent mittimus is inconsistent with his plea agreement and he should therefore be given leave to withdraw his plea under V.R.Cr.P. 11(e)(4) and *State v. Belanus*, 144 Vt. 166, 170, 475 A.2d 227, 229 (1984) (holding court abused its discretion by failing to permit defendant to withdraw his plea when court imposed sentence greater than that recommended; by imposing greater sentence, court calls into question the voluntariness of the plea). We find no merit to this argument. Other than the court's elaboration regarding where defendant should commence his sentence, the order sentencing defendant to six to twenty-four months, to be served PAF ISAP, is exactly what defendant's plea agreement contemplated. With regard to the portion of the order detailing the "understanding" of the parties that defendant is

to commence serving the sentence in a correctional facility until a spot is available to him in the ISAP, as noted above, the court was merely making explicit the reality of the situation — defendant's sentence was set to commence, but there was no bed available to him in the ISAP. As the department points out, this resolution of the situation is squarely within the power of the department under the terms of the statute governing furlough. 28 V.S.A. § 808; see also *Conway*, 161 Vt. at 118-19, 636 A.2d at 738 (holding that statutory scheme governing furlough does not create a liberty interest protected under the United States Constitution, noting statutes "contain no limitations on the discretionary authority granted to the Commissioner," and holding that reincarceration following grant of furlough does not constitute discipline requiring full panoply of procedures such as an evidentiary hearing). Furthermore, unlike the defendant in *Belanus*, nothing in the record reflects that defendant sought to withdraw his plea following the mittimus that defendant now claims commits him to a more severe sentence than the sentence described in his plea agreement. We discern no cause that would require defendant be given leave to withdraw his plea.

In conclusion, we see no incongruity between defendant's plea agreement, the court's initial mittimus, and that from which defendant appeals.

*Affirmed.*