NOTICE: This entry order is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

## ENTRY ORDER

2025 VT 3

SUPREME COURT CASE NO. 25-AP-422

JANUARY TERM, 2026

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | |
| v. | } | Superior Court, Caledonia Unit, |
| | } | Criminal Division |
| | } | |
| Michael Williams | } | CASE NO. 25-CR-08766 |
| | } | |
| | | Trial Judge: Heather J. Gray |

In the above-entitled cause, the Clerk will enter:

¶ 1.     Defendant appeals a trial court's decision to hold him without bail. Although the trial court's initial decision stated that the weight of the evidence against defendant was not great, while this appeal was pending, the trial court corrected one word of its decision. The court deleted the word "not" to clarify that it had concluded that the weight of the evidence was great. Defendant argues that the correction was impermissible because the change was substantive and an appeal was pending before this Court. In the alternative, defendant argues that the weight of the evidence is not great. We conclude that the trial court permissibly corrected its order and that there was substantial, admissible evidence for a reasonable jury to find defendant guilty beyond a reasonable doubt. Therefore, we affirm.

¶ 2.     The law underlying a hold-without bail is well established. Both the Vermont Constitution and related statutes protect a defendant's general right to pretrial release. See Vt. Const. ch. II, § 40 ("All persons shall be bailable by sufficient sureties."). This right, however, is not unlimited. We have explained that Chapter II, § 40(1) authorizes the court to hold a defendant without bail "(1) if the offense charged is punishable by life imprisonment and (2) the evidence of guilt is great." State v. Sartwell, 2025 VT 13, ¶ 4, __ Vt. __ , 336 A.3d 313 (mem.) (citing corresponding language in 13 V.S.A. § 7553). If the State establishes both requirements listed in § 40(1), "a presumption against release arises." Id. (quotation omitted). The defendant then "bears the burden to convince the trial court to use its discretion to release the defendant or to set bail." Id.

¶ 3.    In the alternative, however, if the trial court finds that "the evidence of guilt is not great, the person shall be bailable." 13 V.S.A. § 7553. In such circumstances, a "defendant shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond . . . unless the judicial officer determines that such a release will not reasonably mitigate the risk of flight from prosecution." 13 V.S.A. § 7554(a). Section 7554 lists multiple factors for a court to consider in making this determination.

¶ 4.    Defendant was charged with second-degree murder in violation of 13 V.S.A. § 2301. At an arraignment on August 20, 2025, the court granted the State's request to hold defendant without bail pending a weight-of-the-evidence hearing, which was held on November 18, 2025. The court subsequently issued a written order stating that the evidence of guilt was "not great" but nonetheless holding defendant without bail pursuant to 13 V.S.A. § 7553. See also Vt. Const. ch. II, § 40(1). Defendant timely appealed.

¶ 5.    In its decision holding defendant without bail, the trial court provided the legal standards set forth above. After reciting the evidence in the light most favorable to the State, the decision read "[t]he State has not met its burden of establishing that [defendant's] guilt on the pending second-degree murder charge is great." (Emphasis added). The decision explained that upon a finding that the evidence of guilt is great, a presumption against release arises. State v. Kirkland, 2022 VT 38, ¶ 9, 217 Vt. 653, 283 A.3d 974 (providing "a presumption against release arises" where person is "charged with an offense punishable by life imprisonment" and "the evidence of guilt is great" (quotations omitted)). The court described that it had examined the factors in § 7554, including that "[t]he weight of the evidence is considerable," and determined that defendant had not met his burden of demonstrating that he could be released prior to trial. Therefore, the court granted the State's motion to hold defendant without bail pursuant to 13 V.S.A. § 7553.

¶ 6.    Defendant appealed the hold-without-bail order to this Court. He argued that the trial court erred when it held defendant without bail under 13 V.S.A. § 7553 because its conclusion that the evidence of guilt was not great precluded such a result. See State v. Memoli, 2008 VT 85, ¶ 5, 184 Vt. 563, 956 A.2d 575 ("[A] defendant may not be held without bail under § 7553 unless the district court explicitly finds that the evidence of guilt is great."). In response, the State conceded that because the trial court found the evidence of guilt was not great, defendant could not be held without bail. At oral argument, the State indicated that it intended to withdraw its request to hold defendant without bail. In light of this representation, on December 23, 2025, this Court issued an entry order placing the appeal on hold to allow the State to file such a motion with the trial court.

¶ 7.    The next day, the trial court issued a corrected decision indicating there was an error in the hold-without-bail order. The court struck the word "not" from one line of the order, so the decision read: "The State has met its burden of establishing that [defendant's] guilt on the pending second-degree murder charge is great."

¶ 8.    The State responded by filing a statement with this Court that it would not withdraw its motion to hold defendant without bail. The Court accepted additional briefing and held oral argument.

¶ 9.     Defendant first argues that the trial court impermissibly issued a corrected decision. In the alternative, defendant argues that even if the correction was permissible, the trial court erred when it determined that the evidence of guilt was great.

¶ 10.     We begin with addressing the corrected order.  The parties dispute the applicability of Vermont Rule of Criminal Procedure 36, which governs how and when a court may correct a clerical mistake.  The rule states that "[c]lerical mistakes in judgments, orders, or other parts of the record and error therein arising from oversight or omission may be corrected by the court at any time of its own initiative."  V.R.Cr.P. 36.  The rule also requires that during the pendency of an appeal, clerical mistakes may be "corrected before the appeal is docketed in the Supreme Court."  Id.  After an appeal is docketed and pending, clerical errors may be "corrected with leave of the Supreme Court."  Id.

¶ 11.     According to defendant, Rule 36 does not apply because the court made a substantive correction to its decision, not a clerical one.  "In interpreting rules of procedure and evidence, we employ tools similar to those we use in statutory construction.  That is to say that when construing a rule, we consider its plain language and the purpose it was designed to serve." State v. Amidon, 2008 VT 122, ¶ 16, 185 Vt. 1, 967 A.2d 1126.  Moreover, when our rule is identical to its federal counterpart, we look to federal cases interpreting the federal rule for guidance.[1] Id.

¶ 12.     We recently expounded on the difference between a clerical mistake and an error that could not be corrected under Vermont Rule of Civil Procedure 60(a) in Warner v. Warner. 2025 VT 70, ¶ 18, __ Vt. __ , __ A.3d __ .  We explained that "the 'basic distinction' between clerical mistakes and errors that cannot be corrected . . . is that the former consist of blunders in execution, while the latter consist of instances where the court changes its mind."  Id. ¶ 17 (quotation omitted).  Consequently, "[t]he analysis of whether a judgment is subject to correction . . . thus focuses on what the court originally intended to do."  Id. ¶ 18 (quotation omitted).  "If this analysis reveals that the flaw lies in the translation of the original meaning to the judgment, then [the Rule] allows a correction."  Id. (quotation omitted).

¶ 13.     To determine the court's intent, we look to the text of both the trial court's corrected and original decisions.  See id. ¶ 18 (describing focus of analysis is "what the court originally intended to do").  The corrected order reads:

---

[1] The Reporter's Notes to Rule 36 explain that the "rule is identical to Civil Rule 60(a)." See V.R.C.P. 60(a) ("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.  During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the Supreme Court, and thereafter while the appeal is pending may be so corrected with leave of the Supreme Court.").  Similarly, Rule 60(a) "is substantially identical to Federal Rule 60."  Reporter's Notes, V.R.C.P. 60(a).  Consequently, unless a distinction is material, we do not differentiate between precedent analyzing these three rules.

> The court recognizes there was an error in the court's December 1, 2025 Decision and Order on the State's Motion to Hold Defendant without Bail.
>
> The first paragraph on page 7 of the December 1st Order should read: The State has met its burden of establishing that [defendant's] guilt on the pending second-degree murder charge is great.

The trial court appended a footnote to the corrected decision, explaining that the State could rely on exclusively circumstantial evidence to meet its burden of proof. The footnote also appeared in the original decision.

¶ 14.    The court's original decision demonstrates that removing the word "not" from the decision was merely a correction of a clerical mistake. As indicated above, although the sentence originally included "not," the legal reasoning indicated that the court had found the evidence of guilt great. For example, directly following the statement that the weight of the evidence was "not great" the court appended a footnote explaining that the State's case was permissibly based on circumstantial evidence. See State v. Godfrey, 2010 VT 29, ¶ 18, 187 Vt. 495, 996 A.2d 237 ("The State is allowed to rely exclusively on circumstantial evidence in proving its case."). Notably, the court also used this identical footnote in its corrected decision to support its conclusion that the evidence of guilt was great.

¶ 15.    Moreover, the decision recited the correct legal standards involved and analyzed the factors for release as if the evidence of guilt was great. It indicated that it was shifting the burden to defendant to "demonstrate that there are conditions of release that can be imposed to protect the public and mitigate risk of flight." See Sartwell, 2025 VT 13, ¶ 4 (describing if State establishes both requirements listed in § 40(1), "a presumption against release arises" and defendant then "bears the burden to convince the trial court to use its discretion to release the defendant or to set bail"). After placing that burden on defendant, the court then turned to an analysis of relevant § 7554 factors. In a section analyzing the "weight of the evidence against the accused," the court described that the weight of the evidence against defendant was "considerable."[2]  Finally, following an analysis of the § 7554 factors, the court concluded that defendant had not met his burden to overcome the presumption against release—which, as described by the court itself, only emerges if the court finds that the evidence of guilt is great.

¶ 16.    In sum, the court's correction—removing the word "not" from its decision—makes the original decision internally cohesive and consistent. See State v. Greene, 172 Vt. 610, 611, 782 A.2d 1163, 1165 (2001) (mem.) ("The fact that the substance of the court's order followed boilerplate language that was inconsistent, as well as at odds with defendant's plea agreement, can

---

[2]  This Court recognizes that the weight-of-the-evidence considerations differ between analyses under § 7553 and § 7554. "In the context of a § 7553 weight-of-the-evidence hearing, the phrase 'weight of the evidence' generally refers to whether, under a Rule 12(d) standard, the State has put forward enough evidence of guilt to establish a presumption against release" whereas, "[i]n the context of a § 7554(b) analysis, the weight-of-the-evidence factor can also refer to the relative strength of the State's case against the defendant." State v. Auclair, 2020 VT 26, ¶¶ 16-18, 211 Vt. 651, 229 A.3d 1019 (mem.).

be attributable only to a clerical error.").  A conclusion that the State had met its burden that the evidence of guilt was great aligns with the appended footnote which justifies the State's use of circumstantial evidence to meet its burden.  It conforms with the transition phrase "upon a finding that the weight of the evidence is great" and the observation that the evidence against defendant was considerable.  Finally, it supports the court's ultimate conclusion.

¶ 17.    We are not persuaded by defendant's assertion that the error cannot be a clerical error because "it was not a mere administrative correction of a substantively unimportant point." Defendant asserts that "the court changed the most significant finding in its order—that the weight of the evidence was not great, to a finding that the weight was great" and argues that "[t]here is little that could be more substantive."  (Emphasis in original).

¶ 18.    This Court is aware of the significant impact and shift in expected outcome that this clerical error has had on the parties in this case.  However, "[t]he magnitude of the correction's impact on the parties does not determine the availability of relief."  Warner, 2025 VT 70, ¶ 17. "[W]here the record makes it clear that an issue was actually litigated and decided but was incorrectly recorded, the trial court can correct the judgment . . . even if doing so materially changes the parties' positions and leaves one party to the judgment in a less advantageous position."  Id. ¶ 18 (quotations omitted).  Here, as explained above, the conclusion was incorrectly recorded.

¶ 19.    Because this error was clerical, Rule 36 governs the trial court's power to correct that error.  As described above, generally, a trial court may correct a clerical error "at any time of its own initiative."  V.R.Cr.P. 36.  However, where an appeal is pending, the trial court may make a correction only "with leave of the Supreme Court."  Id.  No such leave was requested in this case.

¶ 20.    At the time the trial court corrected its decision, this Court had placed defendant's bail appeal on hold with leave for the State to withdraw its request to hold defendant without bail. This Court had therefore transferred at least some of its jurisdiction over the bail matter back to the trial court.  While under the circumstances, requesting leave to amend would have been the better practice, we need not decide whether this situation meant the appeal was no longer "pending" for purposes of Rule 36 because we grant the trial court "leave" to make the correction. In addition, it would serve only to further delay this proceeding if we were to remand back to the trial court with leave to provide the correction it has already made.  See State v. Passino, 154 Vt. 377, 383, 577 A.2d 281, 285 (1990) ("We emphasize that the bail hearing must be scheduled as soon as reasonably possible to protect defendant's right to bail.").

¶ 21.    Defendant next argues that the weight of the evidence was not great. "Acknowledging that the threshold for great evidence of guilt lies between 'probable cause' and 'beyond a reasonable doubt,' this Court has adopted the Vermont Rule of Criminal Procedure 12(d) standard for review under § 7553."  State v. Theriault, 2014 VT 119, ¶ 2, 198 Vt. 625, 109 A.3d 448 (mem.).  To establish a prima facie case that evidence meets the constitutional threshold set by Rule 12(d), the State has the burden of showing: "(1) that substantial, admissible evidence of guilt exists, and (2) the evidence can fairly and reasonably convince a fact-finder beyond a reasonable doubt that defendant is guilty."  Id.  On appeal, this Court independently determines whether the standard has been met.  State v. Hardy, 2008 VT 119, ¶ 11, 184 Vt. 618, 965 A.2d 478 (mem.).

¶ 22. The record indicates that the State introduced the following facts. Defendant and the victim had been in an eight-year romantic relationship that had either ended or was in the process of ending—as described by defendant, the relationship had "soured." In the weeks prior to the victim's death, the victim had been involved in a relationship with another man. Defendant had rear-ended this other man in a recent car accident and had told him, if he was "messin' with [the victim], just leave her alone." The day before the victim was strangled to death, she told defendant that she was "done with him." The night prior to her death, the victim left the house she shared with defendant to go to a party and told defendant not to join her. Corroborated by video evidence, she returned to the home in her car at around 3:30 a.m.

¶ 23. At this point in the night, defendant's explanation of the events starkly diverges from other evidence. According to defendant in his first interview with a detective, the victim gave defendant all of her personal effects—phone, wallet, and car keys—and immediately left the house again. Defendant first explained that the victim walked to a car waiting for her on the street. Available surveillance video footage covering the street does not support this account.[3] Later, defendant explained that he had been mistaken and that the victim left on foot. The video footage also does not show her leaving on foot.

¶ 24. When confronted with the inconsistency between his stories and the video footage, defendant asserted, "I didn't put her in [her car]. I didn't take her anywhere in [her car]." Video footage shows the victim's vehicle leaving the house forty minutes after she had arrived at home. According to defendant, after the victim left the home, he started to worry and decided to take her car out to go look for her. However, defendant once again inconsistently explained the timing of this trip. According to defendant, while looking for the victim, he drove past the pull-off area where the victim's body was later discovered.

¶ 25. When interviewing defendant on the day the victim's body was found, a detective observed a red mark on defendant's arm and that defendant's dominant hand appeared swollen. Defendant offered two explanations for the swelling. According to defendant, he broke his hand twenty years prior and that it swelled due to his medication. Defendant also explained that he had been scratched by his cat recently and, alternatively, that he had sustained some scratches while breaking apart some shutters.

¶ 26. Finally, according to the coroner's report, the victim was strangled to death and suffered blunt trauma to her head.

¶ 27. As we have frequently explained, "[t]his Court has upheld numerous convictions based solely on circumstantial evidence." Theriault, 2014 VT 119, ¶ 3. "When reviewing a case based largely on circumstantial evidence, the evidence must be considered together, not separately." State v. Baird, 2006 VT 86, ¶ 13, 180 Vt. 243, 908 A.2d 475 (quotation omitted) (reviewing evidence for purpose of reviewing motion for acquittal but using identical standard required in instant case, namely that Court "will review the evidence presented by the State viewing it in the light most favorable to the prosecution and excluding any modifying evidence,

---

[3] The surveillance video covers the entirety of the intersection of the street leading to the residence.

and determine whether that evidence sufficiently and fairly supports a finding of guilt beyond a reasonable doubt" (quotation omitted)).

¶ 28. In the light most favorable to the State and considering the evidence in its entirety, the State met its burden that the evidence of guilt is great. As defendant concedes, the evidence presented by the State demonstrates a clear motive and opportunity. Defendant and the victim were in the process of ending a long relationship. The victim had recently become involved with another man, and defendant was with the victim in the hours directly before her death. Based on the video footage of the surrounding area, a jury could also reach the conclusion that the only way the victim could have left the house that night was in the car, which defendant affirmatively indicated he drove past the pull-off area where the victim's body was found. Furthermore, a jury could reasonably conclude that the injuries observed on defendant align with a struggle consistent with the way in which the victim was killed. Together this constitutes substantial evidence of guilt which can fairly and reasonably convince a factfinder beyond a reasonable doubt that defendant is guilty. See Theriault, 2014 VT 119, ¶ 2 (outlining requirements to determine evidence of guilt is great).

¶ 29. Finally, because defendant does not challenge the court's § 7554 analysis, we do not address it here.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Harold E. Eaton, Jr., Associate Justice

_____
Nancy J. Waples, Associate Justice

7