## G.T. v. Claudia Stone in Her Official Capacity as Hospital Operations Director of the Vermont State Hospital, et al.

[622 A.2d 491]

No. 92-041

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed December 24, 1992

Mandate Stayed January 19, 1993

Stay of Mandate Expired February 16, 1993

608

*Richard J. Whitaker*, Vermont Advocacy Network, Waterbury, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Janet Bull*, Assistant Attorney General, Waterbury, for Defendants-Appellees.

*Jeffrey A. Meyer, Alexander Scherr* and *Bessie A. Weiss*, Paralegal (On the Brief), of Vermont Legal Aid, Inc., Waterbury, for amicus curiae Vermont Legal Aid.

**Gibson, J.** Plaintiff is a patient at the Vermont State Hospital whose release on conditional discharge was revoked in accordance with 18 V.S.A. §§ 8007 and 8008. The sole question raised by plaintiff's appeal in this declaratory judgment action is the constitutionality of Vermont's statutory scheme governing such conditional discharges. We hold that a postrevocation hearing

under § 8008(e) is insufficient to meet Vermont's due process standards, and that a prerevocation hearing is required except in an emergency, whether or not requested by the patient. We remand for proceedings consistent with this opinion.

According to the stipulated facts, plaintiff has been hospitalized at the Vermont State Hospital (VSH) thirteen times over the past seventeen years. He has been conditionally discharged nine times, and five of those discharges terminated in revocations. Prior to each of the conditional discharges, the executive director of VSH made an independent determination, based on information provided by plaintiff's care providers in the community, that he was a person in need of treatment, as defined under Vermont statutory law.

Plaintiff, with counsel available to him, agreed to each of his conditional discharges upon terms consistent with 18 V.S.A. §§ 8007 and 8008. Notwithstanding these agreements, plaintiff sought (1) a declaration that extensions of conditional discharges and the summary revocation procedure countenanced by §§ 8007 and 8008 violate the due process guarantees of the United States and Vermont constitutions, and (2) an injunction against further extensions or revocations without the opportunity for a prior due process hearing.

The trial court denied relief, concluding that §§ 8007 and 8008 were consistent with constitutional due process guarantees. The court further held that in agreeing to the terms of conditional release, plaintiff waived his right to revocation on grounds other than those specified in § 8008(e), and that plaintiff had the option of obtaining a full hearing by seeking release under § 7618. The present appeal followed.

## I.

Plaintiff contends that the act of extending or revoking the conditional discharge of a patient judicially committed to VSH implicates a liberty interest of the patient subject to the protection of the due process clause. The State relies on the trial court's determination that plaintiff remained bound by his December 28, 1990, commitment order when placed on conditional discharge. The State maintains that, by agreeing to the continued restriction of his liberties through the conditional discharge, plaintiff remained a patient in need of further

treatment after discharge. Central to the State's argument is the contention that once plaintiff was involuntarily committed to VSH, he no longer possessed a liberty interest to be free from involuntary confinement, his liberty interest having been extinguished by the original commitment order. The State also relies on the language of the conditional discharge statute, arguing that it does not create a liberty interest subject to protection by the due process clause.

■■ The first step in weighing the impact of government action on individual rights is to determine whether the specific interest purportedly threatened by government is within the contemplation of the liberty or property language of the Fourteenth Amendment. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The test is not easily applied to conditional discharges from mental health commitments, given the necessarily unique circumstances of each patient's diagnosis and the variety of possible release conditions. To date, the United States Supreme Court has not enunciated a constitutional standard applicable to conditional discharges from mental health commitments. The Court has, however, long held that the conditional liberty of a paroled criminal falls within the scope of the Fourteenth Amendment and is entitled to due process protection. *Id.* at 482. This is also an unquestioned premise of our jurisprudence. See, e.g., *State v. Begins*, 147 Vt. 295, 297, 514 A.2d 719, 721–22 (1986).

Further, the Supreme Court has held that there is no constitutional basis for confining a mentally ill person involuntarily "if [that person is] dangerous to no one and can live safely in freedom." *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975). Several courts have applied this principle to summary revocations of conditional discharge from mental health commitments. See, e.g., *Lewis v. Donahue*, 437 F. Supp. 112, 114 (W.D. Okla. 1977) (revocation of outpatient status without prior notice or opportunity for hearing held a denial of due process); *Meisel v. Kremens*, 405 F. Supp. 1253, 1256 (E.D. Pa. 1975) (summary revocation, without hearing, of mental health patient's long-term leave of absence constituted denial of due process); *United States ex rel. Shaban v. Essen*, 386 F. Supp. 1042, 1044 (E.D.N.Y. 1974) (due process rights must be accorded in revocation of aftercare status of drug dependent persons); *Ball v. Jones*, 351 N.Y.S.2d 199, 205–06 (App. Div. 1974) (same).

■ Although there are differences between parole and conditional release from a mental health commitment, the similarity predominates, and the analogy is instructive. As the court stated in *Meisel*:

> I cannot see how the "conditional liberty" of the paroled mental patient differs in any significant respect from the "conditional liberty" of the paroled criminal or the paroled drug dependent person. Accordingly, I hold that the former likewise falls within the scope of the Fourteenth Amendment and must be protected by the constitutional safeguards of due process.

405 F. Supp. at 1256. But see *Hooks v. Jaquith*, 318 So. 2d 860, 861–62 (Miss. 1975) (decision whether to terminate leave of mental patient must be a medical one, decided by medical experts, based on mental condition of patient and necessity for hospital treatment); *Dietrich v. Brooks*, 558 P.2d 357, 361 (Or. Ct. App. 1976) (where involuntary commitment is limited to 180 days and cannot be extended except by consent or judicial hearing, trial visit of less than ninety days by mental patient may be terminated without a hearing without violating due process rights). We agree with those courts that hold that the liberty interest at stake in a civil commitment proceeding is as valuable an interest as the liberty at stake in a criminal proceeding, see *In re Ballay*, 482 F.2d 648, 668 (D.C. Cir. 1973) ("loss of liberty . . . is obviously as great for those civilly committed as for the criminal or juvenile delinquent"), and conclude that a patient committed to VSH and conditionally released has a liberty status that cannot be terminated without due process of law. See Call, *Constitutional Law: The Summary Revocation of an Involuntary Mental Patient's Convalescent Leave — Is It Unconstitutional?* 33 Okla. L. Rev. 366, 372–74 (1980).

■ Despite the discretion conferred on the commissioner and the written acknowledgement by plaintiff that during conditional release he continued to be a person in need of treatment, plaintiff makes a convincing case that he is far freer outside of VSH than inside it to form the "enduring attachments of normal life" and enjoy "many of the core values of unqualified liberty." *Morrissey*, 408 U.S. at 482. In this light, the revocation of conditional release falls well within the standard of a "massive curtailment of liberty." *Humphrey v. Cady*,

405 U.S. 504, 509 (1972). A due process proceeding was therefore required.

## II.

The conclusion that some process is due patients facing revocation of conditional discharge from mental health commitments does not end our inquiry, however. As the Court stated in *Morrissey*: "[O]nce it is determined that due process applies, the question remains what process is due." 408 U.S. at 481. Vermont provides for a post-recommitment hearing in 18 V.S.A. § 8008(e):

> If the patient is readmitted to the hospital, he may apply immediately for a judicial review of his admission, and he shall be given a written notice of this right and of his right to legal counsel.

Plaintiff's principal arguments are that Vermont's statutory hearing is constitutionally inadequate because it relies solely on proceedings that follow, rather than precede, recommitment and because it is not initiated in every case but only when requested by the patient.*

Plaintiff cites statutes in several states which require "a great measure of due process" and are presumably constitutionally acceptable. All provide greater due process protection than the Vermont statute in mandating recommitment proceedings. The California provision, Cal. Welf. & Inst. Code § 5306.5, provides for a hearing prior to recommitment, but a related statute, § 5308, allows a hearing after commitment when "it is the opinion of [the county mental health] director that the person will now be a danger to self or to another while on outpa-

---

* Plaintiff makes related arguments that the recommitment decision is not made by an independent body and that there is no requirement that the hearing, if any, be conducted within a specified period of time. These arguments are rendered moot by our holding requiring hearings prior to recommitment in nonemergency cases.

Plaintiff also argues that 18 V.S.A. § 8007(g) violates the due process clause of the Fourteenth Amendment by permitting extension of conditional discharge without a hearing to consider the alternative of simple and unconditional discharge. This argument raises issues that are significantly different from those raised under § 8008(e). Further, it does not come before us on a clear record and was not presented below. We therefore decline to reach it.

tient status and that to delay hospitalization until the revocation hearing would pose a demonstrated danger of harm to the person or to another." This provision is generally similar to 18 V.S.A. § 8008(d), which provides:

> If the examining physician certifies in writing to the head of the hospital that, in his opinion, the patient is *a person in need of treatment*, setting forth the recent and relevant facts supporting this opinion, the revocation shall become effective and the patient shall be readmitted to the hospital. If the examining physician does not so certify, the revocation shall be cancelled and the patient shall be returned to the place from which he was taken. (Emphasis supplied.)

"A person in need of treatment" is defined in 18 V.S.A. § 7101(17) as "a person who is suffering from mental illness and, as a result of that mental illness, his capacity to exercise self-control, judgment, or discretion in the conduct of his affairs and social relations is so lessened that he poses a danger of harm to himself or others."

Thus, the Vermont statutory scheme is not sharply dissimilar from statutes in other states that have demonstrated concern for due process. Vermont's statute, however, falls short of protecting the rights of patients on conditional release. Under the federal constitutional standard, we hold that due process requires a judicial hearing prior to recommitment, whether or not requested by the patient, unless immediate recommitment is required because the person poses an imminent danger of harm to himself or another. In cases of immediate recommitment, a hospital staff member familiar with the person's case and current circumstances must state in the recommitment order the specific facts which give rise to the imminent danger, and a constitutionally adequate hearing must be initiated promptly thereafter.

■ We reach the same decision on independent grounds under the Vermont Constitution. We stated in *In re G.K.*, 147 Vt. 174, 178, 514 A.2d 1031, 1033 (1986) that "[t]he Vermont Constitution explicitly states that people are born free and enjoy freedom from restraint as a natural, inherent and unalienable right. Vt. Const. ch. I, art. 1. To place the burden on the patient to assert his right to liberty seems at odds with this fundamental constitutional principle." We went on to hold that the patient-

initiated review process fails to satisfy the due process rights of persons subject to indeterminate involuntary treatment orders under 18 V.S.A. § 7801. *Id.* at 179, 514 A.2d at 1034. Underlying the rationale of our holding was the reality of the condition of many citizens confined to the State Hospital:

> The practical considerations that preclude this Court from holding that patient-initiated review procedures comport with due process are well documented:

> The failure of patients to request a hearing may be attributable to their incompetence, their lack of knowledge of the relevant procedures, the effort necessary to utilize the procedures, the cost of pursuing review, the disorienting effects of drugs or other treatments, or institutional pressures to rely on staff judgments rather than to invoke legal remedies.

> Note, *Developments in the Law — Civil Commitment of the Mentally Ill*, 87 Harv. L. Rev. 1190, 1398 (1974) (footnotes omitted), *quoted in Johnson v. Solomon*, 484 F. Supp. 278, 289 (D. Md. 1979).

*Id.* at 179, 514 A.2d at 1033; cf. *Zinermon v. Burch*, 494 U.S. 113, 132–33 (1990) (where state can feasibly provide predeprivation hearing before depriving person of liberty, it generally must do so, regardless of adequacy of postdeprivation tort remedy).

The same rationale applies in the present factual setting. Patients whose conditional discharges are revoked are uncertain, and often unlikely, to have the capacity, skill, or sense of independence required to confront those exercising strong decision-making power over their lives and status. Because these patients formally agree in advance to the terms of conditional discharge, including possible revocation and recommitment at the discretion of the hospital director, there may be a strong sense that all rights are irrevocably waived.

Although this opinion amounts to a reversal of the trial court decision, it is not clear from the present record whether specific retrospective relief is necessary or appropriate in this case. The record contains no current information on the status of the patient, who in any case appears to seek no retrospective relief

before this Court. Because the parties and the trial court are in a far better position to sort out these questions, we remand for further proceedings consistent with this opinion.

*Reversed and remanded.*