## In re M.L.

[702 A.2d 92]

No. 96-040

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed August 8, 1997

---

*Wendy Beinner* and *Michael K. Benvenuto,* and *Charles Tetreault* and *Bessie Weiss,* Law Clerks (On the Brief), Vermont Legal Aid, Waterbury, for Appellant.

*Jeffrey L. Amestoy,* Attorney General, Montpelier, and *Janet Bull* and *Marybeth McCaffrey,* Assistant Attorneys General, Waterbury, for Appellee.

**Johnson, J.** In this case we address an issue of first impression under Vermont's mental health statutes: whether the family court may issue an order of nonhospitalization that authorizes the State to rehospitalize the patient without a prior hearing if the patient violates certain treatment conditions. Petitioner M.L. appeals from an order of nonhospitalization that includes a summary rehospitalization provision. We agree that the provision violates the statutes governing orders of nonhospitalization, see 18 V.S.A. §§ 7618, 7621, and accordingly reverse.

I.

M.L. is a single man in his late thirties who has been diagnosed with chronic schizophrenia for many years. As a result of his illness, M.L. has for several years been obsessed with A.K., a married woman in her sixties who works as a clerk dispatcher at the Shaftsbury state police barracks. Prior to his most recent admission to the Vermont

State Hospital (VSH), M.L. frequently contacted and harassed A.K. M.L. first met A.K. when he went to the barracks to lodge a complaint against the organization that provided him with mental health services. He later attempted to contact A.K. countless times, both at work and at home. He called her on the emergency lines at the barracks, and called back repeatedly after he was told of the danger to the public of tying up those lines. Twice, he told A.K., "If you hang up on me again, I will kill you." A number of times M.L appeared at the window of the police barracks and watched A.K. at work. This sometimes occurred during the evening shift hours when A.K. was alone at the barracks. He wrote A.K. at least thirty times, telling her that spirits were directing him to make contact with her. He also called A.K. at home several times a day and sometimes during the early morning hours, saying that he had to talk to her.

M.L. persisted in his attempts to contact A.K. despite several court orders, criminal complaints, and the sustained efforts of the state police to protect A.K. On May 31, 1994, M.L. appeared on foot at A.K.'s home and stood in her front yard. He led her husband on a chase into the woods and then reappeared on A.K.'s deck and approached her, until he was secured by her husband and two state police officers.

Less than a month after this incident, in June 1994, the Bennington District Court committed M.L. to VSH for a ninety-day period. See 13 V.S.A. § 4822. This was M.L.'s fifth admission to VSH. When the State sought to extend the period of hospitalization, see 18 V.S.A. § 7620, the parties stipulated that M.L. would remain hospitalized until December 1994, and that if he were still hospitalized at that time, the State would then seek judicial review of the hospitalization order. The State filed a request for judicial review on December 15, 1994.

The court held two days of hearings in March 1995. The State sought either an order of hospitalization or an order of nonhospitalization to be stayed for several months while the Department of Mental Health established a placement in the community with appropriate treatment and supervision. The court issued an order of hospitalization, but stated that M.L. could request a further hearing in four months if a suitable community placement had not been arranged.

During his stay at VSH, M.L. took his medication regularly, complied with hospital rules, and earned privileges to spend unsupervised time on the hospital grounds and in the town of Waterbury.

He did not attempt to contact A.K. Nonetheless, although M.L. complied with his treatment program, he did not accept that he was mentally ill, that he needed treatment for his illness, or that his illness impaired his judgment. In particular, according to his treating psychiatrist, M.L. continued to be obsessed with A.K. and angry with the state police.

In April 1995, the State moved to modify the order of hospitalization to an order of nonhospitalization because an appropriate community placement was available. The court granted the motion, subject to a number of restrictive conditions designed to ensure both proper treatment for M.L. and protection for A.K. Specifically, the order of nonhospitalization stated that: (1) M.L. would receive twenty-four-hour-a-day supervision while living in the community; (2) if M.L. eloped from his treatment program, he could be arrested and returned to the program pursuant to 18 V.S.A. § 7105; and (3) if M.L. eloped twice within one week, visited A.K. or her relatives, or traveled to the towns where A.K. lives and works, he could be immediately returned to VSH and held there for up to seventy-two hours prior to the State seeking judicial review. This third condition authorizing M.L.'s summary rehospitalization is the subject of the present appeal.

## II.

M.L. argues that the summary rehospitalization provision violates the statutes governing orders of nonhospitalization, which authorize a court to modify an order of nonhospitalization or issue an order of hospitalization "after proper hearing." 18 V.S.A. §§ 7618(b), 7621(d).[1] The State urges us to accept the family court's reasoning that summary rehospitalization is a form of treatment authorized by the statute. See 18 V.S.A. § 7618(a) (if court finds that treatment program other than hospitalization is adequate to meet person's treatment needs, court shall order person "to receive whatever treatment other than hospitalization is appropriate"). On this view, the court's broad discretion in crafting an order of nonhospitalization includes the authority to require summary rehospitalization under certain circumstances.

---

[1] M.L. also argues that the court's order violates his due process rights by depriving him of his liberty without a hearing. Cf. *G.T. v. Stone*, 159 Vt. 607, 613-14, 622 A.2d 491, 494-95 (1992) (federal and Vermont constitutions require hearing before patient's conditional discharge may be revoked, unless patient poses imminent danger of harm to self or others). As we conclude that the summary rehospitalization provision violates the relevant statutory provisions, we do not address the constitutional claim.

We are not persuaded by the State's attempts to reconcile summary rehospitalization of persons on orders of nonhospitalization with the statutory requirement that such orders be modified only after a proper hearing. The State first argues that the statute requires only that a hearing be held before an order of nonhospitalization is modified, not before a person is rehospitalized. This argument escalates form over substance. The statutory scheme plainly envisions that a person on an order of nonhospitalization is, in fact, not hospitalized. A court must issue an order of nonhospitalization if it finds that "a treatment program *other than hospitalization*" is adequate for a given person. 18 V.S.A. § 7618(a) (emphasis added). A court that makes such a finding "shall order the person to receive whatever treatment *other than hospitalization* is appropriate." *Id.* Although the order of nonhospitalization will not be judicially modified until a hearing is held, the order is effectively revoked when M.L. is removed from the community and returned to VSH.

Nor do we read § 7618(a) as granting the family court discretion to override the hearing requirement *and* authorize summary rehospitalization under certain circumstances. The court does have broad discretion to craft an appropriate order of nonhospitalization. But, as we have already discussed, the statute draws a clear distinction between hospitalization and treatment other than hospitalization. By its plain language, the statute limits orders of nonhospitalization to requiring "treatment other than · hospitalization." *Id.* Thus, although the court may consider a wide range of options for treatment, summary rehospitalization is not one of those options. See *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335-36, 576 A.2d 450, 452 (1990) (where meaning of statute is plain on its face, Court will enforce statute according to its terms).[2]

---

[2] The dissent's reliance on *In re A.C.*, 144 Vt. 37, 470 A.2d 1191 (1984), is misplaced. In *A.C.*, we noted that the statutory scheme governing the care of mentally retarded persons was not "'fine-tuned enough to distinguish between the varying needs and circumstances of each of the patients.'" *Id.* at 42-43, 470 A.2d at 1194 (quoting *In re M.G.*, 137 Vt. 521, 526, 408 A.2d 653, 656 (1979)). Without question, the same is true in this context; the statute governing orders of nonhospitalization does not attempt to "fine-tune" treatment options for specific situations. See 18 V.S.A. § 7618(a) (court shall order "whatever treatment other than hospitalization is appropriate" for individual). The court's discretion is nonetheless bounded by statutory limits, as we recognized in *A.C.*, where we emphasized that "close adherence to the statutory scheme is essential." 144 Vt. at 42, 470 A.2d at 1194. To claim that the court, in its discretion, has the authority to override a specific statutory requirement stretches discretion to the breaking point.

Ultimately, the argument for summary rehospitalization turns not on statutory interpretation but on a practical problem: How can people such as M.L., who pose a risk of danger to the public or to specific individuals, be released from the state hospital and treated in the community? According to the family court, M.L. "can be treated in the community consistent with public safety . . . only if highly structured conditions with immediate rehospitalization consequences are in place." The State agrees, and maintains that the statutory hearing requirement should not be an obstacle that prevents M.L.'s release from VSH.

Unfortunately for the State's argument, § 7618 plainly and explicitly requires a predeprivation hearing before a patient on an order of nonhospitalization may be rehospitalized. If this requirement appears to prevent M.L.'s release from the hospital, it is only because the State is seeking an order of nonhospitalization for a patient that is admittedly dangerous. In effect, the State wants to release a patient from VSH but nonetheless avoid the risk that judicial procedures or an adverse judicial determination could in any way delay or prevent rehospitalizing M.L. should that be warranted. The statutory scheme does not permit the State to retain this type of control over patients on orders of nonhospitalization, because those patients by statute gain a liberty interest that cannot be terminated without a prior hearing. Cf. *G.T. v. Stone*, 159 Vt. 607, 611, 622 A.2d 491, 493 (1992) (patient committed to VSH and conditionally released has liberty status that cannot be terminated without due process of law).

If a patient is so dangerous that such control is necessary to ensure public safety, then the patient is not an appropriate candidate for an order of nonhospitalization. Indeed, M.L.'s order of nonhospitalization, which requires constant supervision and authorizes summary rehospitalization, is so restrictive that it is better characterized as a plan for hospital treatment in a community setting.[3] The trend toward deinstitutionalization may require the State to seek more restrictive and secure community placements for patients who are too dangerous to live unsupervised in the community. Unless the relevant statutes are amended, however, the court may not authorize summary rehospitalization of patients on orders of nonhospitalization.

The dissent claims that our decision "upsets the careful legislative balance between patients' rights and public safety." 167 Vt. at 60, 702

---

[3] In some ways, M.L. had greater liberty while at VSH, where he was able to travel freely and without supervision through the grounds and the town of Waterbury.

A.2d at 96. To the contrary, our decision follows the Legislature's intent as expressed in the language of the governing statutes. The dissent notes that, based on the trial court's findings, an order of nonhospitalization would not be prudent without a summary rehospitalization provision. But, as we have already discussed, the statute requires a hearing *before* an order of nonhospitalization may be changed to an order of hospitalization. Simply put, based on the trial court's findings, M.L. is too dangerous to be placed on an order of nonhospitalization unless that order eviscerates the statutory hearing requirement. Although the courts have broad discretion to fashion appropriate orders of nonhospitalization, we are not free to override statutory procedures to find some way for a dangerous patient to live in the community.

The dissent may be correct that our decision will not help M.L., who as a result of our holding is more likely to remain hospitalized. The Legislature, however, has the option to revisit the mental health statutes and adapt the statutory requirements to respond to the increasing pressures for deinstitutionalization. As long as it acts within constitutional bounds, designing procedures that protect both mentally ill patients and the public is the province of the Legislature.

In light of our decision, we remand this case to the family court for reconsideration of its order. We express no opinion as to whether M.L. should continue on an order of nonhospitalization or whether, as the court originally concluded, M.L. is too dangerous to be released without a provision for summary rehospitalization. M.L. argues that statutory emergency procedures, such as the emergency examination, 18 V.S.A. § 7504, and the warrant for immediate examination, *id.* § 7505, combined with the other restrictive conditions in the order, are sufficient to prevent harm to A.K., and that summary rehospitalization provides no additional protection. Rather than address this issue now, we prefer to remand for the family court's reconsideration in light of our holding that summary rehospitalization provisions may not be included in orders of nonhospitalization. A substantial period of time has elapsed since the court issued its order, and M.L.'s current situation may be quite different. The family court is better situated to make this determination.

*Reversed and remanded.*

**Morse, J.,** dissenting. The Court holds that Vermont law prohibits the temporary, summary rehospitalization of an involuntary mental health patient for violating the conditions of his order of

nonhospitalization. In doing so, the Court upsets the careful legislative balance between patients' rights and public safety. Although purportedly based on statute, the decision cannot be reconciled with the statutory scheme. Although appearing to protect the rights of patients, the decision in fact frustrates the policy favoring outpatient treatment whenever feasible. Indeed, today's decision benefits virtually no one, least of all M.L. and other mental health patients similarly situated. Accordingly, I respectfully dissent.

## I.

An understanding of the Court's misjudgment requires a brief overview of the governing statutory scheme. The law requires the least restrictive treatment program available for mental health patients. Before ordering that an individual be hospitalized, the trial court must consider whether appropriate treatment is available outside of a hospital setting. See 18 V.S.A. § 7617(c) ("Prior to ordering any course of treatment, the court shall determine whether there exists an available program of treatment . . . which is an appropriate alternative to hospitalization."). The legislative policy could not be more explicit: "Outpatient or partial hospitalization shall be preferred to inpatient treatment." *Id.* § 7703(a).

As this Court has recognized, the trial court may exercise its equitable powers to craft the least restrictive treatment program available consistent with the needs of the individual patient. "Although close adherence to the statutory scheme is essential, we have previously recognized that '[n]ot even the statutory language can be fine-tuned enough to distinguish between the varying needs and circumstances of each of the patients.'" *In re A.C.*, 144 Vt. 37, 42-43, 470 A.2d 1191, 1194 (1984) (quoting *In re M.G.*, 137 Vt. 521, 526, 408 A.2d 653, 656 (1979)).

Consistent with the foregoing policy, the statute provides that a court "shall order" that an involuntary mental health patient receive treatment in a nonhospital setting if it "is adequate to meet the person's treatment needs." 18 V.S.A. § 7618(a). If the patient fails to comply with the order, or the alternative treatment has proved to be inadequate, the court may, "after proper hearing," consider other treatment options, modify the order, or enter a new order directing that the patient be hospitalized for the remainder of the term. *Id.* § 7618(b).

The specific question before the Court is whether, as part of an individual treatment plan, an order of nonhospitalization may provide

that a violation of its terms will result in the patient being immediately returned to the Vermont State Hospital, to be followed by a prompt judicial hearing under § 7618(b). The first point to be noted in this regard is the absence of any statutory language either expressly authorizing or prohibiting such a provision. The authority would seem, nevertheless, to be implicit in the legislative policy favoring nonhospitalization whenever feasible, and the court's express mandate to craft a treatment plan consistent with this policy tailored to the individual needs of the patient.

The facts here present a classic case in point. M.L.'s treating psychiatrist testified, and the trial court found, that an order of nonhospitalization would not be prudent unless the treatment plan included provisions for summary return. As accurately detailed in the Court's opinion, M.L. has been diagnosed with schizophrenia for years, has been obsessed with a woman, A.K., who works in the Shaftsbury state police barracks, has a history of violent and impulsive conduct, and has controlled his behavior through medication and therapy. With the support of his treating psychiatrist, M.L. was placed in a nonhospitalized community-treatment setting. The treatment plan set forth in the order of nonhospitalization provided that he could be returned to the State Hospital, and afforded a hearing within seventy-two hours, if he eloped from the program more than once within a week, visited A. K., or traveled to her home or place of work.

These conditions were carefully designed to protect M.L. from the harmful effects of long-term institutionalization and, at the same time, adequately safeguard A.K. should M.L. attempt to contact her. Despite his demonstrated ability to function successfully in the community, M.L. had not recognized or understood his obsession with A.K., and needed to know that his return was a "certainty if he violat[ed] these restrictions." The trial court thus found, based on the evidence, that the summary return provision constituted an "essential component" of M.L.'s treatment program.

The Court is persuaded, nevertheless, that the summary return condition violates the statutory requirement of a hearing prior to modification of the nonhospitalization order or the entry of a new order of hospitalization. 18 V.S.A. § 7618(b). On the contrary, the order is perfectly consistent with the statutory scheme. No modification of the existing treatment program or new order of hospitalization may occur until the statutory hearing, which must be requested within seventy-two hours of M.L.'s return. Nor does the provision effectively eviscerate the hearing requirement or "escalate[] form

over substance," as the Court charges. 167 Vt. at 57, 702 A.2d at 94. A prehearing emergency hold of approximately seventy-two hours does not remotely resemble a post-hearing hospitalization order of ninety days. To equate the two *is* to exalt form over substance.

Again, the issue must be viewed in its overall statutory context. In addition to an order of nonhospitalization, the State Hospital may "conditionally discharge . . . any patient who may be safely and properly cared for in a place other than the hospital." *Id.* § 8007(a). A conditional discharge becomes absolute at the end of its term, and thus represents a substantial step beyond nonhospitalization toward independence. See *id.* § 8007(c). Yet even in these circumstances, as we held in *G.T. v. Stone*, 159 Vt. 607, 613, 622 A.2d 491, 494 (1992), a patient may in an emergency be immediately rehospitalized if afforded a prompt post-commitment hearing. It would be irrational under the existing statutory scheme to allow summary rehospitalization of a conditionally discharged patient who is close to completion of a treatment program, while disallowing the same for a patient on an order of nonhospitalization in an ongoing treatment program.

As the trial court here noted, the emergency-hold provisions of 18 V.S.A. §§ 7504 and 7505, to which the Court in *G.T.* referred, do not represent a practical alternative to the summary-return condition in his nonhospitalization order. Both statutes are designed for the person "in need of treatment" whose behavior suggests an imminent danger to the patient or others. M.L. is in a different category; he is already in treatment, and as such the State need only demonstrate that he is "in need of further treatment," i.e., a patient "who, if such treatment is discontinued, presents a substantial probablility that in the near future his condition will deteriorate and he will become a person in need of treatment." 18 V.S.A. § 7101(16); see *In re P.S.*, 167 Vt. 63, 72, 702 A.2d 98, 103 (1997). If M.L. eloped from the program, he might or might not represent an imminent danger to A.K., but based upon his treatment history there is certainly a substantial probability of such danger. The threat to A.K. could eventuate, moreover, before a formally scheduled hearing occurred.

The summary-return provision, in short, represented a legitimate and practical means of accommodating the patient's interests and the public safety.

## II.

Relying on *Stone*, M.L. also contends that the summary-return provision violates his constitutional right to due process. On the

contrary, with respect to individuals on conditional discharge, *Stone* held that summary commitment was constitutional when the specific facts giving rise to the imminent danger were documented, and an adequate hearing was initiated promptly thereafter. 159 Vt. at 613, 622 A.2d at 494. M.L.'s order of nonhospitalization contained similar due process protections. It set forth specific provisions which, if violated, would signal a substantial likelihood of danger to A.K. based upon his treatment history, and required a hearing shortly after his return. The process afforded was thus sufficient for a patient on an order of nonhospitalization with a treatment history akin to M.L.'s.

The Court has done patients like M.L. no favor by increasing the likelihood of their prolonged stay in the hospital as opposed to community-based treatment. Accordingly, I would affirm the judgment. I am authorized to say that Chief Justice Allen joins in this dissent.