**STATE OF VERMONT**
**SUPERIOR COURT - ENVIRONMENTAL DIVISION**

|  |  |  |
|---|---|---|
| | { | |
| In re P&R Associates, LLC | { | Docket No. 74-6-12 Vtec |
| | { | |
| | { | |

## Decision in On-the-Record Appeal

In this on-the-record proceeding, Benjamin D. Madow and Leah J. Nussbaum (Appellants) appeal a decision by the Town of Brattleboro Development Review Board (the DRB) granting site plan and conditional use approval to P&R Associates, LLC (Applicant). Applicant plans to transform a bed and breakfast at 13 Gibson Road in the town of Brattleboro (the Town) into use as an inn as defined by the Town's zoning ordinance. Appellants contend that P&R's proposed use is or might be more properly characterized as a therapeutic community residence, and that the DRB should have undertaken a more thorough investigation to this effect.

In reviewing the merits of this on-the-record appeal, the Court has taken into account the parties' briefs, the DRB's decision of June 5, 2012 granting project approval, and the record as a whole, submitted as Appellants' Printed Case and filed on September 27, 2012. We commend the litigants for their professional, thorough, and organized presentation of materials to this Court. We do, however, encourage litigants to remain cognizant of the word count limits in Rule 37(a)(7) of the Vermont Rules of Appellate Procedure.

Appellants are represented by Richard H. Coutant, Esq. before this Court and were represented by Lawrence G. Slason, Esq. before the DRB; P&R Associates, LLC is represented by Stephen Phillips, Esq.; the Town of Brattleboro is represented by Robert M. Fisher, Esq.; and Interested Party Brattleboro Retreat is represented by Christopher Roy, Esq.

## Background

Since 1993, the property at 13 Gibson Road in Brattleboro, Vermont (the Property) has hosted a permitted bed and breakfast with eight rooms, serving up to sixteen guests.[1] The Property is located in the Town's Rural Residential District (RR District) for zoning purposes.

---

[1] Although the facility is known as the Meadowlark Inn, the Property is currently a bed and breakfast, now seeking status as an "inn" under Brattleboro zoning regulations.

Applicant proposes to acquire the Property from its current owners and lease it to Brattleboro Retreat, a not-for-profit mental health and addiction treatment center located in Brattleboro. Among the programs that the Brattleboro Retreat runs is the Uniformed Service Program, serving fire fighters, police officers, emergency medical technicians, military, and other public safety personnel suffering from post-traumatic stress disorder (PTSD). Participants from across New England come to the Brattleboro Retreat to take part in a short-term (typically ten day) outpatient program. Those participants who need lodging during this time period have traditionally stayed in area hotels, inns, and bed and breakfasts, including at the Property.

The Brattleboro Retreat plans to lease the Property to offer temporary accommodations to participants in the Uniformed Service Program during their outpatient program. Applicant proposes no exterior modifications, and existing restrictions related to parking and guest capacity will remain the same. The Brattleboro Retreat will not require participants to stay at the inn; participants may select other lodging options or commute from home. The charges for lodging at the inn will be distinct from charges related to the program; the fee for lodging would not be billed to insurance companies as part of treatment. Staff at the inn would include, at all times, one person with mental health and assessment training, and the inn would not allow alcohol, drugs, or weapons on site.

The DRB held a duly warned hearing on Applicant's proposal on May 7, 2012, at which Appellants expressed concerns regarding the use of the property and requested that the meeting be continued to allow for discovery. At the conclusion of the meeting, the DRB voted to approve the application with a stipulation forbidding on-site individualized treatment. (Appellants' Printed Case at 68, filed Sept. 27, 2007 [hereinafter APC].) The DRB issued its written Findings of Fact and Conclusions of Law approving the application on June 5, 2012. This decision is the subject of Appellants' timely appeal to this Court.

## Discussion

Our review of the DRB's decision is limited to addressing the nineteen questions Appellants raise in their Statement of Questions. See V.R.E.C.P. 5(f). Questions 10, 14, 15, and 16 were not briefed, however, and thus they are waived. See McAdams v. Town of Barnard, 2007 VT 61, ¶ 8, 182 Vt. 259 ("Arguments not briefed are waived."); In re T.A., 166 Vt. 625, 626 (1997) (mem.) ("Issues not briefed are waived."). We therefore decline to address Questions 10, 14, 15, and 16. The remaining questions can be grouped and summarized to ask whether the

DRB erred by determining that the use proposed constitutes an "inn" rather than a "therapeutic community residence," by declining to continue the hearing to allow discovery to investigate whether the Property will be operated as an inn rather than as a therapeutic community residence, and by determining that the proposed use conforms to conditional use and site plan approval standards under the Town's applicable zoning regulations.

For the reasons discussed below, we conclude that the DRB did not err in determining Applicants' proposal to constitute an inn that meets all applicable zoning regulations. We further conclude that the DRB's decision not to continue the hearing or order discovery did not amount to an abuse of discretion or deny Appellants due process of law.

## I.     Standard of review.

In an on-the-record appeal to this Court pursuant to V.R.E.C.P. 5(h), our review is limited to the record made before the municipal panel and the briefs submitted by the parties. See In re Saman ROW Approval, No. 176-10-10 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 2, 2011) (Durkin, J.). We will affirm the municipal panel's factual findings if they are supported by substantial evidence in the record, and we will review its legal conclusions de novo unless such conclusions are within the panel's area of expertise. See In re Stowe Highlands Resort PUD and PRD Appl., 2009 VT 76, ¶ 7, 186 Vt. 568 (mem.). In examining whether there is substantial evidence in the record, we are not permitted to make our own assessment of the credibility of witness testimony or reweigh conflicting evidence in the record. See Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248; In re Appeal of Leikert, No. 2004-213, slip op. at 2 (Vt. Nov. 2004) (unpublished mem.). We are simply to inquire whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support. Devers-Scott, 2007 VT 4, ¶ 6 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)). As for legal conclusions based on those factual findings, we conduct a de novo review, meaning that we consider whether the DRB's decision reached a correct legal conclusion. See Stowe Highlands, 2009 VT 76, ¶ 7. We review the legal question of whether the due process requirements have been satisfied de novo. See In re R.W., 2011 VT 124, ¶ 34, 191 Vt. 108.

3

**II.    The DRB did not err in considering the proposed use an "inn" under the Town zoning regulations.**

Appellants' Questions 2, 3, 6, 7, 11, and 12 ask whether the DRB properly characterized the proposed use as an "inn" rather than as a "therapeutic community residence" under the Town of Brattleboro Zoning Ordinance (the Ordinance). An inn is a conditional use[2] in the RR District in which the Property is located. A therapeutic community residence, although listed as a conditional use in six other districts, is not allowed in the RR District.

   **a.  Whether the facility meets the definition of "inn."**

The Ordinance defines "inn" as:

> A residential dwelling in design and previous use, [now] used for commercial purposes where the patronage is of a transitory nature, the guests being entertained from day to day. Such use must include food services for guests within the structure and may include a restaurant with or without a lounge.

Ordinance § 6100. Based on its findings of fact, the DRB reached the legal conclusion that the use proposed for the Property meets this definition.

Appellants challenge the sufficiency of the evidence supporting the DRB's Findings of Fact 10 and 11, which relate to whether patronage is of a transitory nature. We are to affirm a DRB's findings of fact if they are supported by substantial evidence in the record; in doing so, we are simply to inquire whether the record includes relevant evidence that a "reasonable person could accept . . . as adequate" support. Devers-Scott v. Office of Prof'l Regulation, 2007 VT 4, ¶ 6, 181 Vt. 248 (quoting Braun v. Bd. of Dental Exam'rs, 167 Vt. 110, 114 (1997)).

Findings 10 and 11 state that guests will stay for periods of seven to ten days and that rooms are let on a day to day basis. Robert Simpson, CEO of Brattleboro Retreat, testified that a participant's stay at the inn typically lasts ten to fourteen days in duration, not for an indefinite time period. APC at 47. The current owner of the inn testified that outpatients from the Brattleboro Retreat stayed at her inn on many occasions and that "[m]ost of them are only there for ten days." APC at 37. We regard these statements as relevant evidence that a reasonable

---

[2] Conditional uses are permitted in particular zoning districts only upon the DRB's finding that the use will comply with particular conditions and standards imposed by the Ordinance for the location or operation of the use.

person could accept as adequate support for Findings 10 and 11,[3] and we do not regard the difference between seven to ten as opposed to ten to fourteen days as material in this context.

Appellants also challenge Finding 13, which states, "Food service, breakfast and dinner, is provided" at the inn. They characterize this finding as irrelevant, as the definition of "inn" requires food services but does not specify which meals must be served. (Appellants' Br. at 14, filed Sept. 27, 2012.) We fail to see how the inclusion of a factually-supported but irrelevant or superfluous statement in a decision-making body's findings of fact could impact an appeal unless improperly relied upon. Indeed, findings of fact often include statements meant to provide background information or contextual details. Here, although the DRB could have simply found that the inn provided "food service," we find no error in the additional mention of the particular meals served.

Moreover, substantial evidence in the form of parcel records and photographs demonstrates that the building was a residential dwelling in original design and previous use. Thus overall, we find that substantial evidence supports the DRB's findings of fact relative to the definitional elements of "inn" under the Ordinance. Based on these findings of fact, we affirm the DRB's legal conclusion that the Property is an inn under the Ordinance.

### b. Whether the facility meets the definition of "therapeutic community residence."

The DRB rejected Appellants' argument that the Property will be used as a "therapeutic community residence," which the Ordinance defines as "[a] place, however named, excluding a hospital, that provides, for profit or otherwise, individualized treatment to three (3) or more residents with major life adjustment problems such as alcoholism, drug abuse, mental illness[,] or delinquency." Ordinance § 6100. A provision in the Human Services title of the Vermont Statutes Annotated forbids a person from operating a therapeutic community residence without obtaining a license. 33 V.S.A. § 7013(a).[4] Although Mr. Simpson testified that he understood the definition of a therapeutic community residence and that he did not intend to operate the

---

[3]  Appellants also argue that the DRB should have allowed additional discovery into whether there would be a "minimum enrollment period." We address Appellants' request for discovery in a later section of this decision.

[4]  The statutory definition is substantially similar to the Ordinance's definition: "[a] place however named, excluding hospitals <u>as defined by statute</u> which provides, for profit or otherwise, <u>transitional</u> individualized treatment to three or more residents with major life adjustment problems, such as alcoholism, drug abuse, mental illness, or delinquency." 33 V.S.A. § 7102.11 (emphasis added to show minor differences).

inn as a therapeutic community residence (APC at 45), Appellants allege that the Property's use may nonetheless constitute a therapeutic community residence, prohibited in the RR District.

This Court has no jurisdiction to decide licensing issues. We are, however, bound to review the DRB's decision regarding the nature of the proposed use for zoning purposes. We agree that a use that meets one definition in a zoning ordinance while also meeting the definition for a more restrictive use based on health and safety concerns should be governed by the more restrictive use. We conclude, however, that the DRB did not err in determining that the use proposed here does not meet the definition of a therapeutic community residence.

In arguing that the Property will be used as a therapeutic community residence, Appellants first point to the Brattleboro Retreat's control over the rental of rooms, emphasizing the possibility the "traveling public" will not have the opportunity to stay at the Property. Second, they argue that the presence of a staff member with mental health training and the rules about guns, alcohol, and drugs mean that the Brattleboro Retreat will provide "individualized treatment" on the premises. Third, they argue that a facility can be characterized as a therapeutic community residence even if residents obtain treatment offsite.

### i. Use by the traveling public.

Appellants argue that if the Brattleboro Retreat rents all of the rooms to outpatients and visiting doctors, the Property will not be "operated authentically as an inn." (Appellants' Br. at 22, filed Sept 27, 2012.) Appellants cite to Black's Law Dictionary for the proposition that an inn must serve the traveling public. However, resort to a dictionary is unnecessary where a statute or regulation is clear on its face. See Paquette v. Paquette, 146 Vt. 83, 86 (1985). Here, the Ordinance's definition of "inn" does not appear ambiguous, and nothing in it prevents an inn owner from contracting with another entity to rent the inn and manage the filling of rooms, as long as patronage is of a transitory nature and the inn offers food service. In any case, Mr. Simpson testified that the public may rent rooms when available.[5] APC at 9.

Even if, however, outpatients from the Brattleboro Retreat's Uniformed Services Program constitute the primary or even exclusive users of the inn, the mere fact that three or

---

[5] In their challenge to the DRB's Findings of Fact 12 and 14, Appellants argue that it remains unclear whether additional rooms will be available to the traveling public, as other testimony (APC at 132) suggested that the entire inn would be reserved for program participants. (Appellants' Br. at 14, filed Sept. 27, 2012.) However, in an on-the-record review of factual findings, we may not weigh conflicting evidence. Here, substantial evidence supports the DRB's finding that rooms will be let to the public when there are vacancies. See APC at 9, 62-63.

more persons with the major life adjustment problem of PTSD will rent some or all of the rooms cannot, alone, make the Property a therapeutic community residence. Land use regulations may not be based solely on the identity of the owner or occupier. See Vt. Baptist Convention v. Burlington Zoning Bd. 159 Vt. 28, 30–31 (1992).[6] Rather, the question is one of use: whether the inn will be used to "provide individualized treatment."

### ii. Staff with mental health training and gun, drug, and alcohol rules.

Appellants allege that the DRB erred in adopting Finding of Fact 15: "No psychiatric services or individualized psychiatric treatment will be offered on site." Brattleboro Retreat argues that substantial evidence on the record, such as Mr. Simpson's statement, "There will be no clinical services provided at the inn by [Brattleboro] Retreat" (APC at 4) support the finding. Although the DRB characterized Finding 15 as factual, however, the heart of Appellants' challenge goes to the DRB's legal determination that the Property will not be a place that provides "individualized treatment" within the definition of "therapeutic community residence." Appellants contend that the presence of a person with mental health training and rules about guns, drugs, and alcohol suggest that the inn will provide health assessment or supervision amounting to "individualized treatment" under the definition of "therapeutic community residence." In particular, they point to testimony that staff members with mental health training would be able to identify when guests staying at the inn "may need additional services or different help." (Appellants' Reply Br. at 6, filed Nov. 19, 2012, citing APC at 54-55.)

In on-the-record appeals like this one, we review legal determinations de novo. Neither the zoning ordinance nor the statute defines "individualized treatment." However, the Vermont Department of Disabilities, Aging, and Independent Living (Department), which our Legislature has tasked with regulating therapeutic community residences, provides a thorough definition of this type of facility within its Licensing Regulations (Regulations).[7] Appellants provided a copy of the relevant portions of the Regulations to the DRB as an exhibit at the hearing and to this Court on appeal. APC at 23-24, 112-124. While we lack the authority to determine whether a facility requires a license, we may look to the Regulations for guidance in

---

[6] While municipalities may not regulate based on the identity of owners or occupiers, they may regulate based on uses insofar as use affect public health, safety, or welfare. Id.

[7] The Vermont Legislature charged the Department with regulating certain types of care facilities (including therapeutic community residences) to protect the welfare and rights of patients and assure they receive appropriate care. 33 V.S.A. § 504(a).

appropriately classifying a use for zoning purposes. "Individualized" means "[o]riented toward problem solving and personal growth appropriate to the needs of each resident." APC at 114. "Treatment" is "[a] process of dynamic and planned intervention designed to correct dysfunctions and improve life adjustment, using such methods as counseling, group work, peer or family-oriented therapy, and psychiatric care." Id.

The presence of a staff member with mental health training and the generally applicable rules about guns, alcohol, and drugs do not amount to "individualized treatment." These prudent policies are not individualized or personalized; that is, they are not "[o]riented toward problem solving and personal growth appropriate to the needs of each resident." Innkeepers are generally free to impose rules and policies based on factors such as their location and their normal clientele, as long as such policies do not violate the Constitution. Even though some members of the inn staff will have the training to identify guests who may require different treatment, a basic determination that a person needs treatment does not itself constitute "[a] process of dynamic and planned intervention designed to correct dysfunctions and improve life adjustment, using such methods as counseling, group work, peer or family-oriented therapy, and psychiatric care." It is merely a recommendation that a guest obtain such treatment.

Finally, the Regulations' definition section explains that residents in a therapeutic community residence are persons requiring "a supportive living arrangement to assist them in their efforts to overcome a major life adjustment problem." APC at 114. Thus, the community living aspect of a "therapeutic community residence" in and of itself assists residents to overcome their problems. Substantial testimonial evidence on the record established that living in a supportive community at the inn during the outpatient therapy does not form a component of the Uniformed Services Program; participants may commute from home or procure other accommodations, and they "must be able to independently care for themselves without assistance from the [Brattleboro] Retreat." APC at 4. The Property is simply one among many lodging choices for participants in the Uniformed Services Program; the prudent rules and the presence of staff with mental health training do not change this characterization.

### iii. Offsite treatment

Finally, Appellants also make the legal argument that a facility can be a therapeutic community residence even if treatment occurs offsite. For this proposition, they cite to the Regulations, which state that residents' treatment plan may occur "either by direct service at the

residence or indirectly by referral to a community resource." APC at 122. This quotation falls under Section IV of the regulations, entitled "Common Model Program Standards"; it is not part of the definitions section. It is only if a facility meets the definition of a therapeutic community residence that the rest of the regulations apply. In any case, here, the inn itself will not accept patients for the purpose of providing them the benefits of community living while referring them to Brattleboro Retreat for particular aspects of their treatment plans. Indeed, this case presents the opposite situation. Brattleboro Retreat will provide treatment and will merely refer outpatients to an affiliated inn as one among several options for temporary lodging during their short outpatient program.

We therefore conclude that the DRB did not err in determining that the proposed use qualifies as an inn under the Ordinance and not as a therapeutic community residence. Even though the operation of the Property may be somewhat nontraditional, we see no error in the DRB's determination that, for zoning purposes, the Property may be classified as an inn.

III. **The DRB did not err in declining to continue the hearing for discovery into whether the Property will be operated as a therapeutic community residence.**

Appellants' Questions 13, 17, and 18, ask whether the DRB erred in failing to further investigate Applicant's intended use of the Property. Appellants acknowledge that the DRB's authority to recess a hearing and to compel the production of evidence and attendance of witnesses is discretionary (see 24 V.S.A. § 4464(b)(1) and 24 V.S.A. § 4461(a)), but they allege that the DRB in this case abused its discretion by declining to do so. (Appellants' Br. at 9, filed Sept. 27, 2012.) We find no abuse of discretion in the DRB's decision.

On April 19, 2012 Appellants received the DRB's notice of the May 7, 2012 hearing on Applicant's proposal. Although Appellants do not allege a violation of statutory notice and hearing requirements, they argue that this notice period was insufficient for them to retain counsel and prepare for the hearing, including by obtaining documents and questioning witnesses. Thus, at the DRB hearing, Appellants requested a continuance and an opportunity to discover additional evidence that might demonstrate that Applicant and the Brattleboro Retreat will not use the Property as they claim. APC at 59. Information they desired to discover included "all documents relating to the Uniformed Services Program and all licensing applications and approvals" as well as the program's cost, the lease (not yet finalized at the time of the hearing) between the Brattleboro Retreat and Applicants, information concerning potential reimbursement of inn charges by health insurance or workers' compensation

programs, and whether random drug and alcohol testing might occur at the inn. Id. at 19, 59, 64. In their brief, Appellants also question whether evidence might exist suggesting that the inn might impose a "minimum enrollment period," which could suggest that patronage would not be of a transitory nature as required for inns. (Appellants' Br. at 14, filed Sept. 27, 2012.)

Appellants do not allege that they lacked an opportunity to question Applicant's witnesses on these topics during the hearing. Indeed, the record is replete with testimony on the Uniformed Service Program itself, the Brattleboro Retreat's plans regarding billing, the priorities for room rentals, and the role of the staff at the inn. Additionally, Appellants admit that they received a letter from the Brattleboro Retreat Center dated April 19, 2012 inviting them to an informal informational session at the Property on April 30 and encouraging them to set up an alternate meeting time if they so desired.

Appellants appear to desire to investigate whether activities might occur at the Property that are neither proposed nor authorized to occur given its designation as an inn. We see nothing in either 24 V.S.A. Chapter 117 or in our own Rules of Environmental Court Procedure that would require a municipal panel to allow such broad discovery by interested parties in land use disputes. In fact, the Rules of Environmental Court Procedure instruct this Court, when presiding over a de novo review, to issue a pretrial order establishing the discovery available but "limiting the discovery permitted to that which is necessary for a full and fair determination of the proceeding." V.R.E.C.P. 2(c). We do not discern an abuse of discretion in the DRB's decision not to continue the hearing for further inquiries into the potential for unauthorized use. If Applicants' structures or uses violate its permit, then interested parties are free to request that the Brattleboro Zoning Administrator issue a notice of violation.

## IV.     The DRB did not deny Appellants due process.

Appellants' Question 19 asks whether the DRB denied Appellants due process by declining to continue the hearing for discovery. In particular, they argue that because Brattleboro's adoption of on-the-record review of its DRB proceedings precludes the possibility for discovery in subsequent proceeding before this Court, "due process requires an opportunity to obtain and review relevant documents, discover the testimony of witnesses, retain experts if appropriate, and in general be allowed a reasonable opportunity to be prepared to participate in the hearing in a meaningful way." (Appellants' Br. at 9, filed Sept. 27, 2012.)

10

First, Appellants are correct that procedural requirements can vary based on the nature of subsequent proceedings. Indeed, this is precisely why appropriate municipal panels (AMPs) in on-the-record municipalities—unlike those in municipalities that have not elected to have their proceedings on-the-record—must comply with the Vermont Administrative Municipal Procedure Act (MAPA). MAPA "provides the minimum due process rights of parties in contested hearings." 24 V.S.A. § 1202(c). Some of MAPA's procedural protections include the recording of hearings (24 V.S.A. § 1205(c)) and the swearing in of witnesses 24 V.S.A. § 1206(a)). Although MAPA requires AMPs to give parties, including interested persons, an opportunity "to respond and present evidence and argument on all issues involved" (24 V.S.A. § 1204(b); 24 V.S.A. § 1201(4)), MAPA does not provide for formal discovery. "A local board <u>may</u> grant additional rights to parties as long as the rights of other parties are not substantially prejudiced." 24 V.S.A. § 1202(c) (emphasis added).

Appellants allege that the DRB's decision not to grant a continuance for discovery denied them the opportunity to meaningfully participate, thereby violating the Fourteenth Amendment to the United States Constitution, which prohibits the government from depriving citizens of life, liberty, or property without due process of law.[8] We review the legal question of constitutional due process de novo. See <u>In re R.W.</u>, 2011 VT 124, ¶ 34, 191 Vt. 108. "Analysis of a claim of deprivation of property without due process of law commences with a determination of whether any right requiring constitutional protection in fact is involved." <u>In re Great Waters of Am., Inc.</u>, 140 Vt. 105, 108 (1981). If such a right exists, courts next determine "what process is due." <u>G.T. v. Stone</u>, 159 Vt. 607 (1992) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).

Appellants do not assert that the DRB's action deprived them of a possessory interest in any physical property; rather, they assert a property interest in ensuring that a neighboring property complies with zoning regulations. The Vermont Supreme Court examined a similar situation in deciding <u>Great Waters</u>; there, adjoining landowners alleged that insufficient notice denied them the opportunity to meaningfully participate in an Act 250 District Environmental Commission's deliberations concerning a neighboring landowner's requested permit. <u>Great</u>

---

[8] In their brief, Appellants allege violations of the constitutions of both Vermont and United States (Appellants' Br. At 9, filed Sept. 27, 2012), although their Statement of Questions simply asks whether the DRB "den[ied] Appellants due process" (Appellants' Statement of Questions at 4, filed Jun. 26, 2012). As Appellants fail to plead their claims under the Vermont Constitution with sufficient specificity, we limit our analysis to a general due process analysis under the federal Constitution. See <u>Mellin v. Flood Brook Union Sch. Dist.</u>, 173 Vt. 202, 218 (2001).

Waters, 140 Vt. 105, 109.  Like the DRB in the case now before us, the Commission denied the interested party's request for additional time to file documentary evidence.  Id.  The Vermont Supreme Court found that the Legislature, in granting adjoining landowners the opportunity to participate in Act 250 hearings, did not confer a "'property' entitlement protected by the Fourteenth Amendment."  Id. at 109–110.[9]

We find the Legislature's grant of rights of adjoining property owners to participate in the municipal permitting process substantially similar to its grant of rights to adjoining property owners within the Act 250 context.  We see no constitutionally protected right in this case.  MAPA and applicable portions of 24 V.S.A. Chapter 117 define Appellants' statutory due process rights in this proceeding.  As we see no violation of the requirements of those statutes, we determine that the DRB did not deny Appellants due process in declining to continue the hearing to allow additional discovery into whether the inn might operate as a therapeutic community residence, in contravention of substantial evidence at the hearing to the contrary and in contravention of the terms of the permit itself.

**V.**     **The DRB did not err in determining that the proposed use conforms to conditional use and site plan approval standards under the Town's applicable zoning regulations**.

Appellants' Questions 1, 4, 5, 8, and 9 ask whether the DRB erred in finding that the proposed use conforms to conditional use standards (particularly those relating to the character of the area affected and conformity with town bylaws then in effect) and requirements for site plan approval.  Appellants argue that the DRB erred in relying on the application itself to conclude that the project conformed to applicable standards.  Appellants argue that the application itself is not evidence, and that the DRB took no specific additional testimony on aspects such as planned municipal facilities, traffic, and landscaping.  (Appellants' Br. at 23, filed Sept. 27, 2012.)

We know of no authority prohibiting the DRB from relying on an application to reach a decision as to whether a proposed use complies with zoning standards.  To the contrary, zoning applications typically form the focal point as municipal panels consider whether a proposal conforms to relevant zoning criteria.  Applicant merely proposes a change in use status from

---

[9] Although the United States Supreme Court subsequently overturned a case discussed within Great Waters, the Vermont Supreme Court subsequently noted that the case's "core holding—that the statute in question did not afford adjoining landowners a constitutionally protected interest in the outcome of Act 250 proceedings—does survive."  In re New Cingular Wireless PCS, 2012 VT 46, ¶14, n. 4.

bed and breakfast to inn. The application proposes no expansion or alteration of the structures on the Property and does not seek to expand the number of guests, the number of rooms, or the parking arrangements. Any changes to the scope and nature of the use of the Property are *de minimis*. Having reviewed the application materials and the record as a whole, we see no error in the DRB's determinations regarding the site plan and each of the conditional use criteria.

## Conclusion

For the reasons detailed above, we conclude that the DRB did not err in approving Applicants' proposal and did not abuse its discretion or deny Appellants due process of law when it declined to continue the hearing and order discovery. We therefore **AFFIRM** the conditional use permit, including the conditions it imposed. However, we must correct the DRB's Condition 10 ("There shall be no individualized psychiatric treatment provided by the Brattleboro Retreat or any third party to guests on the premises of the Inn") by striking the word "psychiatric." The Ordinance's definition of a therapeutic community residence does not turn on whether treatment is psychiatric in nature, and as Appellants point out, activities that form part of treatment, such as daily workout routines or yoga session, are not necessarily psychiatric in nature. Under V.R.E.C.P. 5(j), this Court may affirm, reverse, or modify the decision of the tribunal appealed from. We therefore alter the condition slightly to conform to the language of the Ordinance. Condition 10 shall read: "There shall be no individualized treatment provided by the Brattleboro Retreat or any third party to guests on the premises of the Inn."

This matter is remanded to the Town of Brattleboro Zoning Administrator to complete the ministerial act of issuing a Certificate of Occupancy pursuant to Ordinance Section 1326 consistent with the DRB's June 5, 2012 decision as modified by this decision.

Done at Berlin, Vermont this 1st day of February, 2013.

_____
Thomas G. Walsh,
Environmental Judge

13